**UNITED STATES of America,
Appellant,**

v.

**Rogelio LARA, Carlos Morales,
Francisco Delgado,
Defendants,**

**Carlos Morales, Defendant–Appellee.**

**No. 185, Docket 89–1210.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 11, 1989.

Decided May 30, 1990.

---

David C. James, Asst. U.S. Atty. (Andrew J. Maloney, U.S. Atty., Matthew E. Fishbein, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y., of counsel), for appellant.

Bennett M. Epstein (Lawrence M. Herrmann, Epstein & Kirshner, New York City, of counsel), for defendant-appellee.

Before FEINBERG and CARDAMONE, Circuit Judges, and METZNER, District Judge.[*]

CARDAMONE, Circuit Judge:

The government appeals from a judgment of the United States District Court for the Eastern District of New York (Glasser, J.) entered on April 11, 1989, resentencing appellee Carlos Morales to a term which downwardly departed from the Sentencing Guidelines range pursuant to 18 U.S.C. § 3553(b) (1988).

## I BACKGROUND

The facts of this case are straightforward. Defendant-appellee Morales was found guilty at a non-jury trial of conspiracy to possess and possession of cocaine with intent to distribute in violation of 21 U.S.C. §§ 841, 846 (1988), based upon evidence that he and two co-defendants supplied approximately seven kilograms of high-purity cocaine to government agents in three separate transactions in the fall of 1987. The district court sentenced Morales, without reference to the Sentencing Guidelines, to the statute's mandatory minimum sentence of five years to be followed by concurrent terms of three years of supervised release, and a one-hundred dollar special assessment. The government appealed this sentence following the Supreme Court's ruling in *United States v. Mistretta,* 488 U.S. 361, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), that the Sentencing Guidelines are constitutional, and we remanded the case for resentencing in accordance with the Guidelines in an unpublished order filed on March 23, 1989. *See United States v. Morales,* Docket No. 88–1233 (2d Cir. Mar. 23, 1989).

At resentencing defense counsel sought, pursuant to 18 U.S.C. § 3553(b), a downward departure from the Guidelines' range of 121 to 151 months, premised upon a mitigating factor that counsel contended had not adequately been considered by the Sentencing Commission. That factor is the "potential for victimization." Principally, defense counsel argued that the defendant was a "delicate looking young man ... [with] a certain sweetness about him," who had been victimized as a consequence of his diminutive size, immature appearance and bisexual orientation. Defense counsel claimed at the resentencing proceedings that while incarcerated an incident occurred in which "two tough male ... inmates were attempting to coerce defendant by threats into becoming a male prostitute ... for their economic gain and ... enjoyment." The head of the jail unit responded to this event by placing Morales in solitary confinement—also known as "the hole."

The government argued that these circumstances—assuming the alleged incident actually occurred—were not a valid basis for a downward departure under part H of chapter 5 of the Guidelines Manual. In addition, it contended that Morales could find relief from possible prison victimization through administrative remedies or a habeas petition. The sentencing court rejected these arguments and downwardly departed under § 3553(b). In explanation, Judge Glasser stated

> Although this defendant is chronologically 22 years old, he looks 16. Not only does he look 16 but he couldn't add to very much what his attorney said. He looks 16. The presentence report reflects an admitted bisexuality.
>
> This defendant is, and I knew it at the time that I sentenced him, peculiarly vulnerable and were it not for the mandatory minimum sentence which Congress required me to impose, I wouldn't have imposed that at the time.
>
> ... [The guidelines range would result in] a sentence which is unduly severe relative to most other defendants in this Court who do not have the vulnerability, the appearance, the sexual orientation that this defendant presents.
>
> ... [The guidelines sentence] I would regard as being nothing less than draconian, and ... I'm familiar with adminis-

---

[*] Honorable Charles M. Metzner, United States District Judge, Southern District of New York, sitting by designation.

trative procedures and writs of habeas corpus.

They would provide this defendant with little solace.

. . . . .

It is from this sentence that the government appeals. We affirm.

## II  DISCUSSION

Congress promulgated the Sentencing Guidelines to avoid "unwarranted sentencing disparities among defendants." 28 U.S.C. § 991(b)(1)(B) (1982 & Supp. V 1987). In attempting to eliminate disparity Congress enumerated factors the sentencing judge should consider in determining the appropriate sentencing range. *See* 18 U.S.C. § 3553(a) (1988). It recognized that there would be circumstances in which departure from the Guidelines' range would be necessary, and granted statutory authority to depart from the Guidelines' range when "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." *Id.* § 3553(b).

The Commission did not provide a comprehensive list of those factors a sentencing judge should consider in departing from the applicable Guidelines' range, listing instead only a few specific factors, *see, e.g.,* United States Sentencing Commission Guidelines, §§ 5K2.1–.15, p.s. at 5.43–.47 (1989), (U.S.S.G.), leaving the application of other factors to the discretion of the sentencing judge, *id.* § 5K2.0, p.s. at 5.42–.43. The Commission also designated several factors that it deemed would not be "ordinarily relevant" in imposing sentence. *See, e.g., id.* §§ 5H1.1–.6, p.s. at 5.35–.36.

The government has raised several arguments in urging reversal of the sentence. It contends that extreme vulnerability of criminal defendants is not a factor permitting departure under § 3553(b), that the district court improperly relied upon factors the Commission designated as not "ordinarily" relevant at sentencing, that the court's basis of departure contravenes the sentencing philosophy adopted by Congress in enacting the Guidelines, and that the district court circumvented available administrative remedies in attempting to ameliorate the conditions of incarceration. None of these contentions warrant reversal.

■ Before discussing these arguments, we address as a preliminary matter the government's assertion that the language "of a kind, or to a degree" in § 3553(b) should not be applied to Morales because this language was added by Congress subsequent to his commission of the present crime. Congress has indicated that we should apply the guidelines and policy statements issued by the Sentencing Commission that are in effect at the time of sentencing, not those extant at the time of the commission of the crime. *See* 18 U.S.C. § 3553(a)(4), (5) (1988). Thus, the language "of a kind, or to a degree" should be applied to Morales.

### A.  *Appellate Review*

■ In reviewing district court decisions under the Guidelines, we apply *de novo* review to decisions on issues of law and the clearly erroneous standard to findings of fact. *See United States v. Stroud,* 893 F.2d 504, 506–07 (2d Cir.1990); *cf. United States v. Irabor,* 894 F.2d 554, 555 (2d Cir.1990). We review *de novo* the district court's determination that extreme vulnerability of criminal defendants was not considered by the Sentencing Commission "of a kind, or to a degree" as was found here. *See United States v. Summers,* 893 F.2d 63, 66 (4th Cir.1990); *United States v. Aguilar–Pena,* 887 F.2d 347, 350 (1st Cir.1989); *United States v. Uca,* 867 F.2d 783, 786 (3d Cir.1989). The dissent asserts that the Commission considered the propensity of criminal defendants to physical attack in prison when it formulated the Guidelines. Although we agree with that assertion as a general proposition, it is plain that the Commission did not consider vulnerability to the extent revealed in this record—where the only means for prison officials to protect Morales was to place him in solitary confinement. Hence, the peculiar vulnerability

found by the district court was a circumstance not taken into account by the Commission.

Further, we review the district court's factual determination that such extreme vulnerability was present under the clearly erroneous standard of 18 U.S.C. § 3742(e), deferring to the district court's findings because it is in the best position to observe the defendant's demeanor and characteristics. *See Summers*, 893 F.2d at 67. We cannot say that the description of Morales' appearance and demeanor as found by the sentencing court was clearly erroneous.

Because extreme vulnerability of a criminal defendant is a proper ground for departure under § 3553(b), the district court has "sensible flexibility" to depart under circumstances where such action is not unreasonable. *See United States v. Palta*, 880 F.2d 636, 639 (2d Cir.1989); *accord United States v. Correa–Vargas*, 860 F.2d 35, 40 (2d Cir.1988).

### B.  § *5H1 Factors*

■ The government first asserts that the district court relied upon the factors of age, mental and emotional condition, and physical condition that the Commission explicitly designated as "ordinarily" not relevant in imposing sentence. *See* U.S.S.G. §§ 5H1.1, 5H1.3, 5H1.4, p.s. at 5.35–.36. We do not think that the sentencing court relied on the defendant's age; it merely observed that Morales "looks 16." This comment reveals that the trial judge considered the defendant's immature appearance, not his chronological years. The district court did not depart on account of defendant's homosexual orientation—which the government equates with a mental or emotional condition. Instead it considered Morales' sexual orientation, not as a separate characteristic meriting departure, but as it related to his vulnerability. That the district court did not base its sentence upon the defendant's bisexual orientation is of some significance because to have done so might have raised serious constitutional concerns. *Cf. Falk v. Secretary of the Army*, 870 F.2d 941, 947 (2d Cir.1989).

To the extent that the district court relied upon the defendant's physical, mental and emotional condition in finding him particularly vulnerable to victimization, it adhered to the Commission's admonition that these factors "*are not ordinarily relevant* in determining whether a sentence should be outside the guidelines." U.S.S.G. §§ 5H1.3, 5H1.4, p.s. at 5.35–.36. The Commission's language acknowledges the propriety of considering these factors when, in the sentencing judge's view, they present an extraordinary situation. Here, the district court obviously believed it had such an extraordinary situation because of the defendant's particular vulnerability due to his immature appearance, sexual orientation and fragility. The severity of Morales' prison term is exacerbated by his placement in solitary confinement as the only means of segregating him from other inmates. We agree with the district court that this presents an extraordinary situation that warrants considering factors "ordinarily" irrelevant.

Hence, to the extent the § 5H1 factors of physical, mental and emotional condition were relied upon, such reliance was justified by the extraordinary situation faced by Morales. *Cf. United States v. Gonzalez*, No. S 88 Cr. 559, 1989 WL 86021 (S.D.N.Y. July 27, 1989), slip op. at 11 ("the qualifying adverb 'ordinarily' implies that family ties in some circumstances may be considered in a downward adjustment"); *United States v. Hon*, No. 88 Cr. 0052, 1989 WL 59613 (S.D.N.Y. May 31, 1989) slip op. at 4–5 (considering that the defendant "is the mother of a young child ... and [has] a close-knit extended family").

The cases relied upon by the government are inapposite. In *United States v. Burch*, 873 F.2d 765 (5th Cir.1989), the district court upwardly departed from the guideline range because the defendant was highly educated with numerous opportunities for economic advancement, yet engaged in criminal acts. The Fifth Circuit noted that the Commission designated the defendant's education and socio-economic status as ordinarily irrelevant at sentencing and that the court's reliance upon these factors without more was an unreasonable ground

for departure. *Id.* at 769. *See* U.S.S.G. §§ 5H1.2, 5H1.10, p.s. at 5.35, 5.37; 28 U.S.C. § 994(d) (1982 & Supp. V 1987). In the case at hand, the sentencing court, as noted, did not rely solely upon § 5H1 factors as a basis for departing from the Guidelines' range, but considered them instead in light of the added burdens of incarceration defendant faced compared to those defendants not standing in his shoes. Equally inapplicable is the Fifth Circuit's rejection of the district court's downward departure in *United States v. Reed,* 882 F.2d 147 (5th Cir.1989). In *Reed,* the district court had justified a downward departure upon the court's determination that "there is something good in [the defendant]." *Id.* at 151. Clearly, the reasons for departure in this case are far more cogent.

The government cites further to *United States v. Sailes,* 872 F.2d 735 (6th Cir. 1989), which it interprets as affirming the district court's denial of the defendant's request to downwardly depart based upon the needs of the defendant's minor children who required parental guidance. There the district court *had* considered the impact of the removal of the defendant from her minor children and determined that "the proper development of [the defendant's] younger children might be facilitated by the children's removal from her direct influence for a time." 872 F.2d at 739. Reviewing this decision in light of § 5H1.6—designating family ties as ordinarily irrelevant at sentencing—the Sixth Circuit ruled that if family ties *are* relevant they would not "second-guess" the trial judge's determination that the defendant's removal would be the best course. *Id.*

### C. *Philosophy Behind the Guidelines*

The government next urges that the downward departure runs contrary to the sentencing philosophy Congress sought to effectuate through the Sentencing Guidelines. It claims that the Guidelines were based upon the philosophy that the punishment should fit the crime, not the offender, and that the sentencing judge should consider only those characteristics of the defendant that are relevant to the crime committed. The government also contends that the court's consideration of the potential for victimization reflects a rehabilitative model of sentencing rejected by Congress when it enacted the Guidelines.

■ These assertions misread the Guidelines' philosophy. The legislative history reflects that it was not Congress' aim to straitjacket a sentencing court, compelling it to impose sentences like a robot inside a Guidelines' glass bubble, and preventing it from exercising discretion, flexibility or independent judgment.

> The Committee does not intend that the guidelines be imposed in a mechanistic fashion. It believes that the sentencing judge has an obligation to consider all the relevant factors in a case and to impose a sentence outside the guidelines in an appropriate case. The purpose of the sentencing guidelines is to provide a structure for evaluating the fairness and appropriateness of the sentence for an individual offender, not to eliminate the thoughtful imposition of individualized sentences.

S.Rep. No. 225, 98th Cong., 2d Sess. 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3235 (Legislative History). Further, although the role of rehabilitation in sentencing has been sharply restricted by the Guidelines, rehabilitation has not been entirely eliminated from the sentencing process. *See, e.g.,* Legislative History at 3233 (listing rehabilitation as the fourth goal of the Sentencing Reform Act); U.S. S.G. ch. 1, Pt. A, intro. comment 2 at 1.1. Thus, Judge Glasser's consideration of the defendant's potential for victimization—to the extent that it includes a rehabilitative aim—does not contravene the philosophy behind the Guidelines.

■ Again, the government incorrectly asserts that the court is limited to consideration of characteristics of the defendant that are directly related to the crime committed. In support of this proposition it refers to a portion of the legislative history interpreting § 3553(a)(1) and the Fifth Circuit's holding in *Burch* interpreting ch. 4 Pt. A1 of the Guidelines Manual. But

these interpretations relate to provisions authorizing the sentencing court to consider the criminal history and characteristics of the defendant, and do not apply to § 3553(b) which served as the basis of departure in the present case. Congress did not limit what a court may determine under § 3553(b) to have been inadequately considered by the Commission. Rather, this provision was left open to "provide[ ] the flexibility necessary to assure adequate consideration of circumstances that might justify a sentence outside the guidelines." Legislative History at 3261. That history makes plain that Congress did not limit sentencing courts to characteristics directly related to the crime in determining which factors warrant departure under § 3553(b).

### D. *Administrative Remedies*

■ The final argument is that the court erred in lowering Morales' sentence and not requiring him first to exhaust administrative remedies provided by the Bureau of Prisons. *See* 28 C.F.R. §§ 542.10–.16 (1989) (Administrative Remedy Procedure for Inmates). This stems from the well-established principle that a defendant must exhaust administrative remedies prior to seeking habeas corpus relief from a federal court. *See, e.g., Guida v. Nelson,* 603 F.2d 261, 262 (2d Cir.1979) (per curiam). We think this argument misplaced. There is no requirement—statutory or judicial—that a defendant exhaust administrative remedies prior to seeking a reduction in sentence based upon circumstances that could theoretically be redressed through administrative channels. Many of the § 5H1 factors could potentially be so redressed. *Cf.* U.S.S.G. § 5H1.2, p.s. ("Age may be a reason to go below the guidelines when the offender is elderly *and* infirm and where a form of punishment (*e.g.,* home confinement) might be equally efficient as and less costly than incarceration."). If the Commission wanted defendants to exhaust administrative remedies, it could readily have designated § 5H1 factors as relevant only after a defendant had exhausted his administrative remedies, not as "not ordinarily relevant." In addition, § 3553(b) includes no language limiting a district court's consideration of a factor to situations where the defendant has already exhausted his administrative remedies. Because the legislative history gives no hint that Congress aimed to constrain a sentencing judge's discretion only to those factors not subject to resolution through administrative channels, we decline the government's invitation to create such a restriction.

### III CONCLUSION

The district court did not abuse its discretion in downwardly departing from the Guidelines' range pursuant to § 3553(b) in the present case. The personal characteristics of Morales made him particularly vulnerable to inprison victimization. Assaults against vulnerable male or female prisoners make prison life especially dangerous for such individuals. *Cf. Greene v. Meese,* 875 F.2d 639, 641 (7th Cir.1989) (acknowledging that Bureau of Prisons will likely deny requests for relief from disciplinary sanctions allegedly imposed in retaliation for defendant's rejection of homosexual overtones); *Roland v. Johnson,* 856 F.2d 764, 769–70 (6th Cir.1988) (finding that jury could find defendant prison officials failed to effectuate policies to prevent the sexual assault of plaintiff, a more delicate inmate, by two inmates, despite officials' knowledge of numerous sexual assaults at the prison). Extreme vulnerability of criminal defendants is a factor that was not adequately considered by the Commission and a proper ground for departure under § 3553(b). *See* Weinstein, *A Trial Judge's First Impression of the Federal Sentencing Guidelines,* 52 Alb.L.Rev. 1, 17 (1988). The district court had a rational basis for finding such circumstances here. The sentence imposed below should be affirmed.

Judgment affirmed.

METZNER, Senior District Judge (dissenting):

I must disagree with my colleagues' views in this case. In my opinion, the sentence imposed by the court below cannot be sustained by the provisions of 18 U.S.C. § 3553(b). Neither the relevant

statutes nor the Guidelines permit a downward departure from the required Guidelines sentence for a defendant who appears vulnerable to physical attack in prison because of his mannerisms and homosexuality.

The defendant was found guilty of having supplied seven kilograms of 97 per cent pure cocaine to government agents. At the time of sentence the court observed that the evidence against the defendant was overwhelming, that the defendant had committed perjury when he testified at the trial, and that the defendant was still not admitting that he had done something wrong.

When the defendant first appeared for sentence, his counsel stated that he had "grave fears, based on [defendant's] appearance, his way of being, his generosity, his openness and some factors that were mentioned in the presentence report that he will be victimized in a federal prison." The factors referred to apparently relate to the defendant's homosexuality.

The Guidelines' range for the crime committed by the defendant was 121–151[1] months, or 10 to 12–1/2 years. However, because the court had previously declared the Guidelines unconstitutional, it imposed only the mandatory minimum sentence of five years.

After the constitutionality of the Guidelines was upheld, the defendant was remanded for resentencing. At that time his counsel requested a downward departure from the Guidelines' range based on Section 3553(b). He urged "that in this particular case, we have someone who is a delicate looking young man, *someone who for whatever reason has the mannerisms that he has.*" (Emphasis supplied.)

The court stated that while the defendant was 22 years old, he looked 16, and that "[t]his defendant is, and I knew it at the time that I sentenced him, peculiarly vulnerable and were it not for the mandatory minimum sentence which Congress required me to impose, I wouldn't have imposed that at the time." The court went on to say that "nor do I have any hesitation in modifying those Guidelines downward" because the sentence required by the Guidelines was "nothing less than draconian."

When the court used the term "peculiarly vulnerable," I must assume that it was referring to vulnerability stemming from defendant's mannerisms which reflected his homosexuality. The order appealed from states that the sentence imposed pursuant to the Guidelines is a downward departure "because of the defendant's vulnerable nature and his admitted bisexuality."

## I

Section 3553(b) mandates the imposition of a sentence within the Guidelines "unless the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

The district court did not decide the question of whether the Commission adequately took into consideration the factor of "peculiar vulnerability" in formulating the Guidelines, the resolution of which presents an issue of law.

I disagree with the majority's conclusion that the factors involved here were not considered by the Commission. The majority agrees that vulnerability was considered, but not in the form described by the majority, for the first time, as "extreme vulnerability." The majority relies on the fact that Morales, between sentences, was placed in solitary confinement for his protection. This fact is irrelevant to determining the issue of law. What is held today will be applicable to the imposition of an original sentence.

The statute creating the Commission provides that the Commission was to:

"provide certainty and fairness in meeting the purposes of sentencing, *avoiding unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar*

---

1. The court below mistakenly stated that the Guidelines required a sentence of 151 months.

*criminal conduct* while maintaining sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices."

28 U.S.C. § 991(b)(1)(B) (1982 & Supp. V 1987) (emphasis supplied).

18 U.S.C. § 3553(a) sets forth the factors to be considered in imposing sentence. None of them involves the issue of whether the Commission adequately considered the factor under consideration in this case, except subparagraph (6) which refers to "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct...."

With the statutory directives in mind, it is apparent that the Commission, in formulating the Guidelines, adequately considered the factor of a defendant being vulnerable to physical attack in prison because his mannerisms and appearance convey his sexual orientation.

The statute directs that in determining whether the Commission adequately took a factor into consideration, "the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission." 18 U.S.C. § 3553(b). In making this determination, it was said in *United States v. Uca*, 867 F.2d 783, 787 (3rd Cir.1989) that:

> "In exercising our review function on the question whether the Commission adequately took certain factors into consideration a[n] [appellate] court should respect the overriding congressional purpose of reducing sentence disparity and achieving general uniformity of treatment."

*See also United States v. Williams*, 891 F.2d 962, 964 (1st Cir.1989).

The members of the Commission are experienced individuals who know of the existence and the extent of homosexuality. A male homosexual is not an unusual person. A male homosexual who, by outward mannerisms, indicates his homosexuality, is not an unusual person. Different, perhaps, but not unusual. The Commission,

charged with removing unwarranted disparity in sentencing, could not have overlooked a not unusual set of factors in setting norms for sentencing.

Furthermore, the Commission was directed by Congress to consider the "nature" and "capacity" of correctional facilities in formulating the Guidelines. 28 U.S.C. § 994(g). Here again, the members of the Commission, because of their breadth of experience, were familiar with the prison environment and the propensity of prisoners to attack physically other inmates. The majority recognizes this but describes the factor as extreme because of Morales' personal experience in prison. As pointed out above, this experience does not affect the question of law before this court. The Commissioners could not have ignored this not unusual factor in prescribing a guideline applicable to this case pursuant to statutory directive.

## II

Even assuming that the Sentencing Commission has not considered the factor of vulnerability because of physical mannerisms, this court must determine whether this factor is sufficiently unusual to warrant departure. This, too, presents a question of law with plenary review. *United States v. Hays*, 899 F.2d 515 (6th Cir.1990); *United States v. Lang*, 898 F.2d 1378 (8th Cir.1990); *United States v. White*, 893 F.2d 276, 278 (10th Cir.1990); *United States v. Diaz–Villafane*, 874 F.2d 43, 49 (1st Cir. 1989).

It is agreed that vulnerability, although not expressly mentioned by the Commission as a factor, was considered by the Commission. The Commission considered physical condition, United States Sentencing Commission, *Guidelines Manual*, § 5H1.4 (Nov. 1989) (U.S.S.G.), as it might impact on the length of sentence. The Commission stated that such condition is not ordinarily relevant in determining departure except in the case of "an extraordinary physical impairment [which] may be a reason to impose a sentence other than imprisonment." U.S.S.G. § 5H1.4, p.s. The

Senate Report, S.Rep. No. 225, 98th Cong., 2d Sess. 52, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3356 (Legislative History), in commenting on physical condition, talks of "a particular serious illness," such as terminal cancer. Defendant's immature appearance, mannerisms and homosexuality do not present an extraordinary situation and are a far cry from the serious health problems contemplated by Congress or the Commission.

The Commission, in a policy statement regarding mental and emotional conditions, also found that these conditions are not ordinarily relevant in determining whether departure should be granted. U.S.S.G. § 5H1.3, p.s. Homosexuality is not a mental or emotional condition. Homosexuals, like heterosexuals, may have mental or emotional problems. There is no indication that this defendant has any such problems.

Furthermore, 28 U.S.C. § 994(d) limits consideration of mental or emotional condition "to the extent that such condition mitigates the defendant's culpability." It is clear that plaintiff's condition is not remotely related to his culpability.

The floor debates relating to section 3553(b) make clear that a court's departure power was to be highly circumscribed:

> "Adherence to the guidelines is therefore properly required under the law except in those *rare and particularly unusual* circumstances in which the court concludes that there is present in the case an aggravating or mitigating circumstance of a kind or to a degree not included in the guidelines, and that the presence of this circumstance should result in a sentence different from that described."

133 Cong.Rec. 516647 (daily ed. Nov. 20, 1987) (statement of Senator Hatch) (emphasis supplied).

The Commission has said in a policy statement that while there may be departures on grounds other than those stated in the Guidelines or outside suggested levels, "[i]n its view, however, such cases will be highly unusual." U.S.S.G. Ch. 1, Pt. A, intro., p.s. at 1.7. It is apparent, therefore, that departures are recognized as proper

only when the factor involved significantly differs from the norm.

We do not have here a highly unusual circumstance. Persons who look young and whose mannerisms may indicate homosexuality are not unusual persons. Physical attack in prison is not an unusual situation. The incarceration of such a person does not create an unusual case. The combination of these factors does not create an atypical case. *United States v. Rosen*, 896 F.2d 789, 792 (3d Cir.1990).

In short, physical mannerisms causing physical attack in prison do not, as a matter of law, present a highly unusual circumstance permitting departure from the Guidelines.

### III

If the sole question in this case is the reasonableness of the departure from the Guidelines, the court below abused its discretion even under the standards in this circuit of "wide discretion," *United States v. Palta*, 880 F.2d 636, 639 (2d Cir.1989), and "sensible flexibility," *United States v. Correa–Vargas*, 860 F.2d 35, 40 (2d Cir. 1988).

One of the primary motivating factors in the creation of the Sentencing Commission and the adoption of the Guidelines was to create, to the maximum extent possible, uniformity in sentencing. 28 U.S.C. § 991(b)(1)(B). As the Sentencing Commission stated: "Congress sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct by similar offenders." U.S.S.G. Ch. 1, Pt. A, intro., p.s. at 1.2. Persons guilty of the same offense should receive the same punishment where possible.

The Guidelines are addressed mainly to the crime committed and conduct of the defendant relevant to the commission of the crime. They give small value to the individual characteristics of a defendant, although departure in this area is recognized. The Commission has stated in the introduction to the Guidelines that "[w]hile Chapter 5, Part K lists factors that the

Commission believes may constitute grounds for departure, those suggested grounds are not exhaustive.... In its view, however, such cases will be highly unusual." *Id.* at 1.7.

Many judges are unhappy with the Guidelines, for one reason or another. That unhappiness clearly comes through in the views of the court below. However, until Congress changes the law, which is its province, we must proceed within the reasonable parameters of the statute and the Guidelines. *See United States v. Aguilar–Pena*, 887 F.2d 347, 353 (1st Cir.1989) ("Judicial dissatisfaction alone, no matter how steeped in real-world wisdom, cannot be enough to trigger departures, lest the entire system crumble."); *United States v. Lopez*, 875 F.2d 1124, 1126–27 (5th Cir. 1989) (disagreement with the Guidelines does not provide a reasonable basis for departure).

We are told in the floor debate that departure should be made only in the atypical, unusual case. 133 Cong.Rec. 516647 (daily ed. Nov. 20, 1987) (statement of Senator Hatch). The Senate Report on the original bill defines departure as the rare form of a circumstance which has not been considered by the Commission, or the usual form which has been considered but is present in a particularly extreme form. Legislative History at 3261–62. Homosexuality and physical mannerisms creating vulnerability are not circumstances of a rare form, nor an extreme form.

The introduction to the Guidelines Manual at 1.6 states: "When a court finds an atypical case, one to which a particular guideline linguistically applies, but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." The Commission went on to say that it has adopted this departure policy because of "the difficulty of foreseeing and capturing a single set of guidelines that encompasses the vast range of human conduct potentially relevant to a sentencing decision." *Id.* In both of these statements, the Commission refers to "conduct," which obviously means the conduct of the defendant in relation to the commis-

sion of the crime. As discussed above, this defendant's conduct does not significantly differ from the norm, either with respect to the crime committed, or as a characteristic of the individual.

The Commission concluded by saying that it "believes that despite the courts' legal freedom to depart from the guidelines, they will not do so very often. This is because the guidelines, offense by offense, seek to take account of those factors that the Commission's sentencing data indicate make a significant difference in sentencing at the present time." *Id.* at 1.7, p.s.

The case law has followed these directives in limiting the power of the court to depart. In *United States v. Williams*, 891 F.2d 962 (1st Cir.1989), a case involving downward departure, the court said at 964: "To implement the guidelines properly ... courts must remember the importance which Congress, and the Commission, attached to ensuring that like situations are treated alike."

The court went on to say at 967:

"So long as we are unready to consign 'the oft-stated importance of eliminating disparity in sentencing' to the scrap heap, then departures must be bottomed on *meaningful* atypicality; in other words, the circumstances triggering a departure must be truly 'unusual.'"

Similar views are found in *United States v. Van Dyke*, 895 F.2d 984, 987 (4th Cir.1990); *United States v. Bolden*, 889 F.2d 1336, 1340–41 (4th Cir.1989); *United States v. Uca*, 867 F.2d at 787.

Drug trafficking is one of the most serious crimes facing us. The defendant is not a steerer-addict seeking to support his habit by being involved in the sale of several glassine envelopes. Rather, he is an intelligent young man, with no indication of being a drug user, who was involved in the sale of 7 kilos of 97 per cent pure cocaine.

Through experience, we have learned that the usual glassine envelope contains 1.5 to 2.5 grains and costs a minimum of $5. If we take an average of two grains per sale, the 7 kilograms of cocaine would end up in 53,900 glassine envelopes worth a

minimum of $260,000. There have been estimates that the street level value of a kilogram of cocaine is $85,000, which would make 7 kilos worth $595,000. Cook, *The Paradox of Antidrug Enforcement,* Forbes, Nov. 13, 1989, at 105. The amount and purity suggest that the defendant is in the higher echelons of drug trafficking. The Guidelines would recognize this as warranting an upward departure from the 121–151 months applicable in this case. U.S.S.G. § 2D1.1, Comment. (n. 9).

As the result of today's decision, this defendant will sit in cell A serving five years' incarceration, while next door in cell B will be an inmate, who may even be homosexual without outward manifestation of his sexual orientation, convicted of the same crime, who must look at the four walls around him for five additional years under the minimum Guideline sentence because he lacks greater vulnerability to attack flowing from physical mannerisms. This result cannot be justified by any reasonable interpretation of the Guidelines or the policies behind them.

The ruling in this case creates a class of defendants who, by reason of their mannerisms and appearance, will receive favored treatment regardless of the nature of the crime committed.

If there is a problem in prisons with the protection of criminals from physical attack, it should not be dealt with by imposing a lighter sentence on a "vulnerable" person. It should be corrected by better prison administration. Failure to do so would result in liability for damages under 42 U.S.C. § 1983. *Roland v. Johnson,* 856 F.2d 764, 769–70 (6th Cir.1988).

In this case the sentence cannot be sustained under either a "wide discretion" or "sensible flexibility" power in the sentencing judge.

The judgment should be reversed and the case remanded for resentencing in accordance with the views expressed here and in the Guidelines.