**UNITED STATES of America, Appellee,**

v.

**Ronald HAYNES, and Jahmal Rose, Defendants–Appellants.**

**Willie Goldwire, Ronald Duran, and Natasha White, Defendants.**

**Nos. 244, 23, Dockets 92–1075, 92–1102.**

United States Court of Appeals, Second Circuit.

Argued Sept. 30, 1992.

Decided Feb. 3, 1993.

Christine E. Yaris, New York City, for defendant-appellant Ronald Haynes.

Alan G. Polak, New York City, for defendant-appellant Jahmal Rose.

Robert Feinberg, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Andrew J. Maloney, U.S. Atty., Emily Berger, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY, of counsel), for appellee U.S.

Before MESKILL, Chief Judge, and LUMBARD and CARDAMONE, Circuit Judges.

CARDAMONE, Circuit Judge:

Appellants, Ronald Haynes and Jahmal Rose, each pleaded guilty to one count of conspiracy to distribute crack cocaine. Both contend that special mitigating circumstances exist that should have resulted in a downward departure from the sentencing guildeines' range. Haynes and Rose appeal their sentences imposed on February 7 and 11, 1992 respectively in the United States District Court for the Eastern District of New York (Glasser, J.) on the grounds that the sentencing court improperly refused to grant such a downward departure.

Congress has mandated that federal judges follow the guidelines of the United States Sentencing Commission, which establishes an applicable range of punishment for a given offense. Departure from the sentencing guidelines' range is permitted only where special mitigating factors, not adequately considered by the Sentencing Commission, are present. These appellants serve as a sad reminder of the terrible toll in lost lives exacted on our nation's youth by illegal drugs, because even though they are both from good families, they were unable to resist the allure of the drug culture. Their circumstances, though unfortunate, fail to present factors that were *not* addressed by the guidelines.

## BACKGROUND

Haynes and Rose, two African–American males in their early 20s, grew up in poor neighborhoods in the boroughs of New York City. Haynes, a high school star athlete, received a basketball scholarship from a private preparatory school in North Carolina at the age of 18. Unfortunately, after a brief stay he dropped out of this school. Returning to New York, he became romantically involved with Natasha White and later joined her in a crack cocaine distribution network. Jahmal Rose graduated from public high school in 1987 where he was an average student and pursued several odd jobs until December 1989, when he too joined the same drug distribution organization.

According to the government, both appellants occupied positions of significant authority within the 18–member drug network. They coordinated the production and distribution of crack on a large scale: the organization vended narcotics 12 hours a day, seven days a week, and earned thousands of dollars each week. Haynes allegedly often carried an Uzi submachine gun on his person, and in the area where both were arrested, police found a nine millimeter gun with a laser aiming device designed to ensure hits on targets.

In December 1990 appellants, together with two co-defendants, were charged in a two-count indictment with conspiring to distribute in excess of 50 grams of a substance containing cocaine base (or crack) and possession with intent to distribute in excess of five grams of a substance containing cocaine base in violation of 21 U.S.C. §§ 841 and 846 (1988 & Supp. III 1991). At the end of the second day of their trial Haynes and Rose entered guilty pleas to a lesser included count of conspiracy to distribute in excess of five grams of crack cocaine.

A pre-sentencing report proposed a guideline offense level of 50 for Haynes and 46 for Rose. These levels meant a life sentence in each case. Appellants objected and reached agreement with the government that resulted in lower levels: Haynes securing an offense level of 42, with a sentence range of 360 months to life; Rose obtaining a 41 level, with a sentence range of 324 to 405 months of incarceration.

On December 10, 1991 they submitted letters to Judge Glasser asking him to depart downward from the sentencing guidelines. Haynes argued that he was entitled to such departure because: 1) he was a young minority male who grew up in a poor socio-economic environment; 2) he was recruited into the drug conspiracy by Natasha White's sexual blandishments, which as a youth he was too inexperienced to resist; 3) he played a lesser role in the enterprise; and 4) prosecution in state court would have resulted in a lesser sentence. Rose contended that downward departure for him was appropriate because: 1) he had been the victim of unrelated random violence; 2) he grew up without a father, which caused deep psychological trauma; 3) he had been denied all contact with his infant daughter by the child's mother; and 4) prosecution in federal court would result in a longer sentence than he would have received in state court.

The sentencing court flatly declined to depart from the guidelines on the grounds asserted. Referring to Haynes, the district court ruled it was inappropriate for appellant to blame those around him for his personal vices, noting that "to suggest ... that the neighborhood[s] in which [he] grew up [are] responsible for what Mr. Haynes is today is in effect to condemn every person who lives in those neighborhoods[,] and the fact of the matter is ... that the overwhelming majority of persons who live in those neighborhoods are victims of the Ronald Hayneses who live in those communities." Apparently moved by Haynes' personal history, Judge Glasser nevertheless continued:

> What I do feel badly about ... what really troubles me very deeply, more deeply than I am really able to express,

is the fact that I don't have any discretion in this case.... [Congress has] taken it away from [judges]. The guidelines are very, very rigid and Draconian in many respects, particularly in this one. I think they're Draconian. *There isn't a legitimate basis which I've been able to find to depart.*

(emphasis added). With respect to Rose, the sentencing court was critical of the defendant's conduct, but stated again that were it within his discretion, "the sentence would be less than the sentence I am required to impose." In both cases, the district court imposed the minimum sentence within the guidelines' range, sentencing Haynes to 360 months (30 years) and Rose to 324 months (27 years), plus five years of supervised release and a $50 special assessment in each case.

Haynes and Rose appeal their sentences, stating the district court mistakenly believed it did not have the power to depart downward. According to appellants, the court had authority to depart from the guidelines' range based on their "youthful lack of guidance," the prosecution's choice of federal over state jurisdiction for initiation of the instant prosecution, and the discriminatory impact of the enhanced sentence for cocaine base offenses. We affirm and in the discussion that follows analyze each of the three issues raised.

## DISCUSSION

Congress enacted the Sentencing Reform Act of 1984 and established a Sentencing Commission charged with promulgating sentencing guidelines in an attempt to avoid sentencing disparity of those found guilty of similar criminal conduct. *See* 28 U.S.C. § 991(b)(1)(B) (1988). The legislature recognized that departure from the sentencing range would still be necessary. Thus, the guidelines permit a court to depart from the normal range when "there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b); Unit-

ed States Sentencing Commission, *Guidelines Manual*, § 5K2.0 (Nov. 1992) (U.S.S.G.).

The Sentencing Commission enumerates specific factors a sentencing court may consider in departing, *see* U.S.S.G. § 5K2.1–.16, but this inventory is neither exclusive nor exhaustive and a sentencing court retains discretion to consider other factors. U.S.S.G. § 5K2.0; *United States v. Lara*, 905 F.2d 599, 602 (2d Cir.1990); *United States v. Correa–Vargas*, 860 F.2d 35, 37–39 (2d Cir.1988). On the other hand, departure has generally been precluded based on certain factors the Commission designated as "not ordinarily relevant." U.S.S.G. § 5H1.1–.6 (*e.g.*, age, educational level, family or community ties). As a matter of policy, a departure is not supposed to be a frequent occurrence, but is to be employed only in an unusual case. *See* U.S.S.G., Ch. 1, Pt. A, ¶ 4(b); *United States v. Uca*, 867 F.2d 783, 787 (3d Cir.1989).

We have ruled that a district court's refusal to depart downwardly is not appealable unless the guidelines were misapplied, the court misapprehended its authority or imposed an illegal sentence. *See United States v. Sharpsteen*, 913 F.2d 59, 62–63 (2d Cir.1990). Hence, when refusal to depart downwardly rests on a sentencing court's misapprehension of its power to do so, an appeal will lie. *United States v. Richardson*, 923 F.2d 13, 15 (2d Cir.1991). In such a case we review *de novo* the legal question of whether a particular factor may be an appropriate ground for departure, *see United States v. Alba*, 933 F.2d 1117, 1121 (2d Cir.1991), and subject the findings of fact that establish the existence of that factor to the clearly erroneous standard of review.

### A. *Youthful Lack of Guidance*

Haynes and Rose believe that the sentencing court incorrectly assumed that it lacked authority to depart downwardly. They maintain that it had the power to reduce their sentences below the guidelines' range based on their "youthful lack of guidance," which they note was recognized as a grounds for departure by the Ninth Circuit in *United States v. Floyd*,

945 F.2d 1096 (9th Cir.1991). *Floyd* affirmed a district court's departure from the guidelines' range of 360 months to life imprisonment. The district court sentenced defendant—convicted for involvement in a cocaine conspiracy—instead to 194 months in prison. *Floyd* held the guidelines "fail to adequately take into consideration the effect that a person's youthful lack of guidance ha[s] on that person's criminality." *Id.* at 1099. It defined the term "youthful lack of guidance" as a lack of guidance and education, abandonment by parents and imprisonment as a minor. *Id.* at 1098–99. For several reasons, we do not adopt a youthful lack of guidance factor as a reason for downward departure in this case.

We begin by noting that youthful lack of guidance has not been adopted as the law in this Circuit. Further, as a result of *Floyd* the Sentencing Commission on May 11, 1992 amended the guidelines, effective November 1, 1992. In particular, it amended § 5H1.12 to provide, "Lack of guidance as a youth and similar circumstances indicating a disadvantaged upbringing are not relevant grounds for imposing a sentence outside the applicable guideline range."

Next, even were youthful lack of guidance a relevant factor to be considered for downward departure, appellants have failed to make out any of its elements. Neither demonstrated that parental supervision or education was absent from their lives. Ronald Haynes declares he was never given the guidance to enable him to resist the sexual blandishments of co-conspirator Natasha White. This contention ignores the facts. Haynes was raised in a nurturing environment by his mother, who described him as her "favorite" child. Far from abandoning Haynes and his siblings, Haynes' mother stayed at home from work until her children were old enough to care for themselves. That she provided a constructive home environment is evident from how Haynes' two siblings have prospered: His sister is currently a college pre-med student and his brother attends the University of Nevada–Las Vegas on a basketball scholarship. Haynes attended school until the tenth grade and had an excellent opportunity to advance himself by attending a prep school outside of New York.

Jahmal Rose rests his appeal for departure on his abandonment by his father. This assertion also fails. The Rose household was apparently no less caring than that of Haynes. Although Rose did not know his father, he evidently had other role models, such as the family's minister, who wrote a letter on Rose's behalf at sentencing. His siblings were successful; both his brothers are currently serving in the U.S. Navy. Rose did not lack education; he graduated from high school. Again, neither appellant served prison time as a minor, a requirement under the third prong of the "youthful lack of guidance" test. These facts stand in stark contrast to those involving Floyd, who suffered from a lack of education, was abandoned by both parents, and was imprisoned for a manslaughter conviction at age 17. *See Floyd*, 945 F.2d at 1098.

Because of the vast number of varying circumstances reflecting human conduct it is not possible to synthesize those cases where downward departure has been held permissible. In this Circuit we have sustained downward departure based on extraordinary family circumstances, *see United States v. Johnson*, 964 F.2d 124, 128–30 (2d Cir.1992) (sole responsibility for raising four young children); *Alba*, 933 F.2d at 1122 (twelve-year marriage, two children, living with disabled, dependent father and grandmother), extreme vulnerability, *see United States v. Gonzalez*, 945 F.2d 525, 526–27 (2d Cir.1991) (defendant susceptible to homophobic attacks); *Lara*, 905 F.2d at 603–04 (same), and outstanding employment history, *see United States v. Jagmohan*, 909 F.2d 61, 65 (2d Cir.1990) (inter alia, solid employment record, naivete displayed in committing offense).

Here, because of their intelligence and family, these appellants could have led constructive lives. Instead, having set out on a path of criminality and inevitably being caught, each of them would like to portray themselves as "victims" of youthful lack of guidance. While we express—as did the district court—sympathy for their families, we are unable to accept youthful lack of guidance generally as a reason for downward departure, particularly, in the instant case where its elements were not present.

## B. *Disparity Between Federal and State Sentences*

Appellants next challenge the prosecution's decision to bring this case in federal—rather than state—court, asserting that the decision is a sound reason for departure from the guidelines. They think that federal law provides for stiffer sentences than state law for drug crimes, and there is a public perception that sentences actually imposed in federal court are heavier than those imposed in state court. Acknowledging that due process is not violated by choice of forum, appellants nonetheless contend that the *result* of the charging decision to bring them before a federal forum causes an enhanced sentence under the guidelines. They conclude that the choice of forum should be considered as an aggravating circumstance, not adequately considered of a kind or to a degree by the guidelines. We find this argument unpersuasive.

Although a question of first impression in this Circuit, a sister circuit had this precise issue before it in *United States v. Dockery*, 965 F.2d 1112, 1117–18 (D.C.Cir. 1992). There it was held that departure based on a prosecutor's choice of federal rather than state jurisdiction was not a permissible circumstance to consider. *Dockery* correctly noted that the guidelines do not address the question of prosecutorial forum choice because the Sentencing Commission recognized that decisions on choice of forum are an exclusive function of a prosecutors' discretion. Obviously, the guidelines written against the background of an existing criminal justice system were not so ambitious as to take those matters traditionally confided to executive action—for example, who to charge, with what, and when—and make them subject to judicial oversight. We adopt this reasoning, which meets appellants' argument.

Additional reasons strongly counsel against departure based on the disparity between state and federal sentencing regimes. It has been often stated that the sentencing guidelines were adopted by Congress to achieve uniformity in federal sentencing for similarly situated defendants.

*See, e.g., United States v. Restrepo,* 936 F.2d 661, 671 (2d Cir.1991); *United States v. Joyner,* 924 F.2d 454, 460–61 (2d Cir. 1991). Allowing departure because a defendant might have been subjected to different penalties had he been prosecuted in state court would make federal sentences dependent on the law of the state in which the sentencing court was located, resulting in federal sentencing that would vary from state to state. To adopt this rationale for departure would surely undermine Congress' stated goal of uniformity in sentencing. *See* 28 U.S.C. § 991; *United States v. Vilchez,* 967 F.2d 1351, 1355 (9th Cir.1992) (district court had no authority to depart downward to equate the sentence of defendant with that of co-defendant sentenced to shorter term in state court).

Moreover, divergence from the guidelines' range is generally permitted only in the "atypical" case. U.S.S.G., Ch. 1, Pt. A, ¶ 4(b); *accord United States v. Sitton,* 968 F.2d 947, 961–62 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 478, 121 L.Ed.2d 384 (1992). Since defendants charged with controlled substance violations often face different state and federal sentences on equivalent charges, this disparity is not the sort of atypical or unusual factor meriting departure. Consequently, a prosecutor's choice of forum is not a reason for downward departure.

### C. *Discriminatory Impact on African–Americans for Crack Crimes*

■ Haynes and Rose further insist that the harsher penalties for crack cocaine—compared to simple cocaine—crimes is a proper basis for displacement of the guidelines. Expressly disavowing an equal protection challenge to the underlying statute and guidelines—recognizing it would be futile, *see United States v. Pineda,* 847 F.2d 64, 65 (2d Cir.1988) *(per curiam ); United States v. Cyrus,* 890 F.2d 1245, 1248 (D.C.Cir.1989)—they insist nevertheless that because most crack users are African–Americans—while most cocaine users are white—the enhanced crack penalties unfairly punish African–Americans and should be a ground for downward departure. This speculative contention is meritless.

A downward departure may not be predicated on the fact that penalties for cocaine crack are more severe than those involving cocaine. A departure on such basis is not permitted because the enhanced penalties for crack reflect a rational and specific congressional aim of deterring drug transactions involving crack. The purpose is obvious—crack cocaine is the most addictive and destructive form of cocaine, and because it is also cheaper it is more widely available and has had therefore a corresponding increase in usage. *See United States v. Reina,* 905 F.2d 638, 640 (2d Cir.1990); *United States v. Collado–Gomez,* 834 F.2d 280, 281 (2d Cir.1987) *(per curiam ), cert. denied,* 485 U.S. 969, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988). Hence, the harsher penalties for crack crimes present no basis for downward departure.

### CONCLUSION

We have carefully considered the other points raised by appellants and find them to be without merit. For the reasons stated the judgment of the district court is affirmed.