**UNITED STATES of America, Plaintiff,**

v.

**Rachel TUCKER, Defendant.**

**No. LR–CR–91–150.**

United States District Court,
E.D. Arkansas, W.D.

May 21, 1992.

Charles Banks, U.S. Atty. by Michael Johnson, Asst. U.S. Atty., Little Rock, Ark., for plaintiff.

Paul Johnson, R. David Lewis, Little Rock, Ark., for defendant.

## RULING FROM THE BENCH[1]

GEORGE HOWARD, Jr., District Judge.

THE COURT: Inasmuch as the government does not object to the pre-sentence report and the defendant has withdrawn those objections heretofore filed, the Court will adopt the findings contained in this report. Accordingly, the total offense level is 34, the criminal history category is 1. The guideline range is from 151 months to a maximum of 188 months, but is limited by the maximum allowable by statute to 72 months.

However, the Court finds that there exists mitigating circumstances both of a kind in some instances and to a degree in others, not adequately taken into consideration by the sentencing commission in formulating the guidelines that, in the judgment of this Court, should result in a sentence different from that applicable in this proceeding by the guidelines.

The following are the mitigating circumstances or factors that the Court has relied on in making this finding. Dr. Edward Mahoney, the forensic psychologist who conducted a forensic evaluation of Ms. Tucker from November 4, 1991 through December 5, 1991 at the Metropolitan Correctional Center in Chicago reported that Ms. Tucker has suffered from a history of abuse. Dr. Mahoney noted in his findings that Ms. Tucker was sexually abused as a child by both her father and her oldest brother. Parenthetically the Court notes that no objections have been raised by the government regarding the accuracy of this report. Ms. Tucker married at the age of 16 in an effort, in this court's judgment, to escape such victimization but instead it appears to have developed a victimized personality, that is, she has. Dr. Mahoney reports the defendant was physically abused by her first husband Jack Randall until her husband left her and their two children.

Ms. Tucker remarried only to suffer the loss of her second husband, Marvin Tucker, to emphysema. Ms. Tucker remarried a third time in approximately 1972 to Charles Churchman, but according to Dr. Mahoney's report, was physically abused on the night of her honeymoon and obtained an annulment shortly thereafter.

In the judgment of this Court this history of victimization of Ms. Tucker, coupled with her age, may place her personal safety in jeopardy should she be incarcerated in a federal facility.

Ms. Tucker's suffering has not been limited to physical abuse. In the past two years she has witnessed a number of family members, including a son and daughter,

---

1. Rachel Tucker, a 67 year old female, who pled guilty to a two count information charging her with conspiracy to possess with intent to distribute amphetamine and methamphetamine, Schedule II controlled substances, a Class D felony, and possession of methamphetamine, a Schedule II controlled substance, a Class A misdemeanor, in violation of Title 18 U.S.C. § 371 and Title 21 U.S.C. § 844(a), respectively, appeared for sentencing on May 21, 1992.

undergo lengthy prosecution by the government in this court. To be more specific that daughter is Debra Noland who was convicted of mail fraud and is currently serving time in a federal facility. A son, Marvin Tucker, Jr. has been incarcerated involving a charge of mail fraud as well as his involvement in this offense.

The Court noted during the trials or hearings involving these relatives the presence of Mrs. Tucker on numerous occasions. The Court took note of her movement, the reaction facially, and the Court is of the view that this, these prosecutions, especially when the family members have been called to testify or support the government against other family members, has been rather burdensome. In essence, she has personally witnessed the dissolution of her family, and this has had a psychological impact on her.

In a hearing on or about March 19, 1992, on the question of Mrs. Tucker's competency, the government acknowledged recognition of the defendant's stress associated with this prosecution. The Court also notes that the defendant is currently seeing a physician for a degeneration of the jaw bone that requires medication and treatment.

Dr. Mahoney's report also noted the following conditions. Dizziness, eye trouble, ear trouble, frequent colds, tooth problems, shortness of breath, heart palpitation, arthritis, and further scrutinizing the record the Court also notes that she suffers from cramps in her legs, a painful shoulder, knee problem, pressure in her chest.

The Court further observed a comment made by a psychologist, Dr. Douglas A. Stevens, in a report submitted from the Southwestern Institute, that is of some significance, and he stated, and I quote, "One significant additional piece of history is that she," Mrs. Tucker, "reports being clinically dead for four minutes during a partial hysterectomy in 1959."

Based upon the totality of these circumstances this Court is persuaded that home confinement with electronic monitoring is appropriate. In this regard the Court notes that she has no history of substance abuse, no history of failure under community supervision, a stable residence, a telephone, the financial ability to pay the cost of the program. She's employed, as a matter of fact, self-employed, and there is no history of assaultive behavior.

Further, the Court is of the view that the electronic monitoring device with home detention is indeed sufficient to address the need for punishment, isolating the defendant from the mainstream of society and serve also as a deterrent not only to her but to others who might be inclined to indulge in similar conduct. Also, a medium for rehabilitation.

At the sentencing scheduled for March 25th, the Court advised the parties that the Court was contemplating a downward departure in the sentencing guidelines and enumerated the factors being considered. The government requested and received a continuance until March 30th to prepare its response to those factors.

At the resumption of the sentencing hearing on March 30th, government advised the Court of a psychological examination to determine whether defendant would be victimized if incarcerated in a federal penal institution. Upon motion of the government, and without objection by defendant, the Court agreed to such an examination. Accordingly, the Court directed Dr. Darryl Matthews to conduct the necessary examination that was suggested by the government. A copy of that report has been received. The doctor was requested to determine whether Ms. Tucker would be victimized if incarcerated.

Here are the material findings of Dr. Matthews. Although he has testified from the witness stand about these findings, the Court will comment briefly on these that are material to this sentencing procedure at this time. He states, "To state my findings, I am unable to determine with reasonable medical certainty or probability whether or not Ms. Tucker would be victimized were she to be incarcerated. I do not believe that psychiatric and behavioral sciences have attained the technical ability to make such a prediction in the absence of prior episodes of institutional victimization or threats thereof, particularly in the case of elderly female inmates."

The report continues in relevant part. "The most that can be said with confidence about Ms. Tucker's institutional adjustment is that it would be a difficult one associated with stress, anxiety and depression. To comment further on this, it is clear that Ms. Tucker is depressed. This depression appears to be a response to her current legal situation and that of her family members. She's being treated with medications by her personal physician for depression and these are probably helping her. She still manifests some depressive symptoms, and her depression would probably worsen were she to be incarcerated. If incarcerated she will require ongoing mental treatment."

Given the fact that this Court has observed Mrs. Tucker, not only in the current proceeding but in those proceedings involving family members, the Court's experience in other criminal matters over the past 12 years while occupying a seat on this federal bench, it appears as though perhaps the Court is in a better position than Dr. Matthews, the psychiatrist, in considering the totality of the circumstances and determining what is appropriate.

Accordingly, the following sentence is imposed. Defendant is placed on probation for a period of five years subject to the following conditions.

Defendant is placed on home confinement or detention with electronic monitoring for a period of three years. Now, Mrs. Tucker, I want you to listen carefully. That's one condition. You are not to leave that home under any circumstance unless it is to attend church on Sundays and to seek medical assistance. You are not even to leave that premises to buy food, clothing or anything for the next three years. I want you to understand that.

THE DEFENDANT: I understand.

THE COURT: If you violate this rule and you are brought back, I'm going to give you the maximum time I can give in any federal facility. Is that clear?

THE DEFENDANT: Clear.

THE COURT: Do you understand the condition?

THE DEFENDANT: Yes.

THE COURT: The defendant shall pay a fine in the sum of $10,000. The fine is to be paid upon the liquidation of a portion of defendant's real estate holdings. The defendant shall pay the fees generated by the probation department in connection with the home detention monitoring and the electronic services. She's also to pay those necessary fees following the termination of the three year home detention period, that is, the supervision by the probation department, whatever those fees are. She is to pay the special assessment $50 on count 1, $25 on count 2, aggregating a total of $75. That is due and payable to Mr. Michael Johnson immediately. Mr. Johnson, defense counsel, is she in a position to do so or will she need some time?

MR. PAUL JOHNSON: We'll do so immediately, Your Honor.

THE COURT: All right. The Anti-drug Abuse Act of 1988 is applicable. Accordingly, the defendant shall not make use of any controlled substance. She shall submit to periodic drug testing at least once every 60 days or at such time as she is directed to do so by the probation department.

The Court, in arriving at the sentencing imposed, took into consideration the following factors: the seriousness of the offenses involved in this proceeding, to promote respect for the law and to provide just punishment for the offense; to serve as a deterrent not only with respect to the defendant but others in society who might be inclined to indulge in similar conduct; to protect the public from further crimes on the part of the defendant and, moreover, as the Court has already indicated, the Court is persuaded that this sentence will afford the defendant an opportunity to become rehabilitated and to receive needed medical care, attention, as well as an environment that will make her less vulnerable due to her physical and psychological infirmities.

Are there any other matters we need to take up at this time?

THE PROBATION OFFICER: Your Honor, I have been advised by officer Gary Duke, the electronic monitor specialist in our office, that due to his not being available, it would be ten days before we would

be prepared to place the unit in the home and place the bracelet on Ms. Tucker.

THE COURT: All right. So it will be ten days before that monitoring device will be placed on on your person, Ms. Tucker, but at the same time the conditions set out in this sentence apply. You will not leave home unless it is to attend church or to seek medical attention. If you attend church, you should get a certificate or statement from the church and deliver it to the probation department.

The Court might note that the defendant does meet all of the criteria that this Court must take into consideration in determining whether or not home detention is appropriate. I won't go through that list. I am persuaded that this was made crystal clear by Mr. Holt, who has conducted a personal investigation and stated from the witness stand that she does meet all of the criteria.[2]

If there's nothing further we will be in adjournment.

---

**2.** In assessing the suitability of home confinement, the following criteria are to be weighed and considered on a case by case basis by the Court: the health, mental stability, substance abuse history, assaultive behavior, prior record of conviction, community and family stability, suitability of the residence, adequacy of telephone facility, financial condition and employment status of the candidate. *See:* Home Confinement Policies and Procedures For Offenders, July 5, 1991, Administrative Offices of the United States Courts.