**UNITED STATES of America, Appellant,**

v.

**Rachel TUCKER, Appellee.**

**No. 92–2419.**

United States Court of Appeals, Eighth Circuit.

Submitted Jan. 15, 1993.

Decided Feb. 24, 1993.

Michael D. Johnson, Little Rock, AR, for appellant.

John I. Purtle, Little Rock, AR, for appellee.

Before RICHARD S. ARNOLD, Chief Judge, MORRIS SHEPPARD ARNOLD, Circuit Judge, and JEAN C. HAMILTON,[*] District Judge.

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Defendant Rachel Tucker pleaded guilty to charges of possessing methamphetamine and conspiracy to possess with intent to distribute amphetamine and methamphetamine. Because of the large amounts of drugs involved, her sentencing guideline range was 155–188 months. Because of a statutory ceiling applicable to her case, however, she was legally eligible for only a six-year sentence. After extensive medical inquiries into Tucker's competency and mental state were performed, the trial court decided to depart from the guidelines and sentenced Tucker to three years of home detention, 793 F.Supp. 894. This appeal followed and we reverse.

### I.

It is true that the federal sentencing guidelines are not entirely inflexible. Indeed, the statute creating the Sentencing Commission explicitly provides that a court

---

[*] The HONORABLE JEAN C. HAMILTON, District Judge for the Eastern District of Missouri, sitting by designation.

may depart from an otherwise applicable guideline range if it "finds that there exists an aggravating or mitigating circumstance ... not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). The Commission, in turn, has itself noted that these kinds of circumstances "cannot, by their very nature, be comprehensively listed and analyzed in advance," but it goes on to identify "some of the factors that the Commission has not been able to take into account fully in formulating the guidelines." U.S.S.G. § 5K2.0, policy statement. The list, the Commission admits, is not exhaustive. U.S.S.G. § 1A4(b), policy statement. But where the Commission has listed a "factor" as having been taken into account, it cautions that "departure from the applicable guideline range is warranted only if the factor is present to a degree substantially in excess of that which ordinarily is involved in the offense." U.S.S.G. § 5K2.0, policy statement. In other words, each guideline is to be regarded "as carving out a 'heartland,' a set of typical cases." U.S.S.G. § 1A4(b), policy statement.

We have held that in determining whether a departure is maintainable, we will ask whether the circumstance relied on in departing may be legally relied on; whether, as a matter of fact, the circumstance is present in the record; and, finally, whether the magnitude of the departure is reasonable. *United States v. Lang*, 898 F.2d 1378, 1379–80 (8th Cir.1990). With these principles in mind, we turn to a consideration of their application to the case at hand.

## II.

■ The district court at an initial sentencing proceeding announced that it was considering a sentence outside the range provided by the guidelines. The court noted that Dr. Edward Mahoney, a forensic psychologist, "reported that Ms. Tucker has suffered from a history of abuse" because she was "sexually abused as a child by both her father and her oldest brother." The court asserted, too, that she had been abused "by her first husband ... until her husband left her and her two children." She was also, according to the court, "physically abused on the night of her honeymoon [by a third husband] and obtained an annulment shortly thereafter."

The court concluded from this personal history that Tucker was subject to being victimized and that her condition "may place her personal safety in jeopardy should she be placed in a detention facility." The court went on to recount that it had observed Tucker and believed that she had experienced stress because of her prosecution, and psychological injury because she had witnessed the associated prosecution and conviction of members of her family. The court noted also some physical ailments from which Tucker suffered that would probably require treatment. The court said that "the totality of these circumstances" warranted departure. But in summing up its concerns, the court alluded to Tucker's "vulnerability." "If she is incarcerated," the court opined, "I think she would be vulnerable due to the victimization ... that she has been subjected to from a very early age." Appellee's appendix at 22–26.

At a later sentencing hearing, following another psychological examination, this one by Dr. Daryl Matthews, the court reviewed the concerns it had previously expressed, and added to the list the fact that Tucker was 67 years old. The court again placed emphasis on Tucker's "history of victimization" and reiterated that that history "may place her personal safety in jeopardy should she be incarcerated in a federal facility." *Id.* at 72–73.

■ We begin our consideration of this record by noting the difficulty that we have in fixing on the precise reason that the district court departed. Our first task on review, as we have said, is to determine whether that reason is one that the law allows. It is at least clear to us that the court thought that a number of the secondary facts found by it supported the general conclusion that Tucker was at some considerable risk of being victimized in a prison. (Though the court did not say so, we pre-

sume that it was led to this conclusion by the assumption that past abuse may have so distorted Tucker's personality, and lowered her sense of self to such a degree, as to make it impossible or exceedingly difficult for her to defend herself or resist imposition.) We are not prepared to say that such a personality configuration is never possible, and we believe that the potential for victimization can provide a proper predicate for a departure. *See, e.g., United States v. Lara,* 905 F.2d 599, 602–03 (2d Cir.1990).

But an examination of *Lara* is instructive. In that case, the trial court had information that " 'two tough male ... inmates were attempting to coerce defendant by threats into becoming a male prostitute ... for their economic gain and ... enjoyment.' " *Id.* at 601. By contrast, in this case, the only testimony concerning the possibility of victimization came from Dr. Matthews, and it does not support the trial court's decision. Dr. Matthews testified that he had done some consulting with respect to Tucker's prospects for victimization, and he had spoken with one authority who believed that "individuals who were victimized in women's facilities tend to have dependent personality disorders and that it was rare for victimization to occur outside of this particular psychiatric diagnosis." He also testified that the same authority advised that it was "rare for victimization to occur outside the context of homosexual relationships that develop within an incarcerated setting." He was told by one doctor that "elderly women tended to be treated ... as 'grandmothers' and that they are treated with respect or care and that they tend not to be victimized" and by another that "homosexual victimization was unlikely in the event of elderly women because they tend not to involve themselves in homosexual relationships, and this area of victimization doesn't usually occur in women's prisons among the elderly." Dr. Matthews, however, was unable to give an opinion as to the likelihood of Tucker being victimized, because he could not "determine reliably whether Mrs. Tucker has a dependent personality disorder ... [since] the psychological test-

ing is so unreliable that I've not been able to form a portrait, a personality portrait, of her." Therefore, he did not even reach the question of whether the medical opinions he had solicited were entitled to credence. Appellee's appendix at 48–49.

We have held that the "guidelines materials clearly indicate that departures 'were intended to be quite rare,' " *United States v. Neil,* 903 F.2d 564, 565 (8th Cir.1990), quoting *United States v. Justice,* 877 F.2d 664, 666 (8th Cir.1989), *cert. denied,* 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989), "and thus should be restricted to situations in which substantial atypicalities are found to exist," *United States v. Desormeaux,* 952 F.2d 182, 184 (8th Cir.1991). We note no substantial atypicalities supported by the record here. To the extent that the testimony bears on the question of victimization, it seems to us to incline rather to the conclusion that there is no significant likelihood of it. In any case, the evidence lends insufficient support to the district court's conclusion.

■ The trial court also expressed concern about Tucker's age and health. But the guidelines specifically enjoin that these matters are "not ordinarily relevant" in determining whether a sentence should be outside the applicable guideline range. U.S.S.G. § 5H1.1, § 5H1.3, § 5H1.4, policy statements. We discern nothing in this record that takes the defendant outside the perimeters of the ordinary case. We offer the same observation with respect to the district court's conclusion that the "totality of these circumstances" (chance of victimization, age, and health) somehow combine to transform this into a case outside the "heartland" that the guidelines establish.

III.

For the reasons indicated, we reverse the judgment below and remand the case for imposition of a sentence of 72 months incarceration.