UNITED STATES of America, Appellee,

v.

Vicki Lou HAMMER, Appellant.

No. 90–5270.

United States Court of Appeals,
Eighth Circuit.

Submitted Feb. 13, 1991.

Decided July 23, 1991.

David L. Warg, Minneapolis, Minn., for appellant.

Jon M. Hopeman, argued (Jerome G. Arnold, Jon M. Hopeman and Denise Reilly, on brief), Minneapolis, Minn., for appellee.

Before FAGG and BEAM, Circuit Judges, and HEANEY, Senior Circuit Judge.

PER CURIAM.

Vicki Lou Hammer appeals from her conviction and 188–month sentence for conspiracy to possess with intent to distribute cocaine from 1984 to May 18, 1989, in violation of 21 U.S.C. § 846 (1988). Hammer was an important participant in the conspiracy to distribute cocaine in the Twin Cities headed by Ralph "Plukey" Duke. Five co-conspirators who made deals with the government testified at her trial (which was separate from that of several of the conspirators, including Duke, who were tried together) that she made many cross-country trips transporting cocaine by car, allowed her house in St. Paul to be used as a storage place and distribution center for drugs, and personally organized transactions and made deliveries. Despite this testimony, Hammer argues that the evidence was insufficient to support her conviction. She claims, incredibly, that she never knew Duke was involved with drugs and that her seeming acts of participation were merely instances of her innocent association with drug dealers. In addition, Hammer argues that the district court misapplied the relevant-conduct provision of the sentencing guidelines. See U.S.S.G. § 1B1.3(a). She argues that the evidence does not prove that she conspired to possess the particular amounts used by the district court in calculating her base offense level. Our review of the record, however, convinces us otherwise. To this extent, Hammer's argument merely restates her sufficiency argument. Because we find no error, our recitation of the strong evidence against Hammer would have no precedential value. The judgment of the district court is affirmed. See 8th Cir.R. 47B.

HEANEY, Senior Circuit Judge, concurring.

I concur. The evidence was clearly sufficient to sustain Vicki Lou Hammer's conviction for conspiracy to possess and distribute five kilograms or more of cocaine from 1984 to 1988. The record also supports the 188–month guideline sentence imposed—the sentence was based on trial evidence which established that Hammer transported and stored fifty or more kilograms of cocaine as a part of a conspiracy with Ralph ("Plukey") Duke. *See* U.S.S.G. § 2D1.1(c)(4).

I write separately to highlight several concerns that I have with the sentencing guidelines and their application in the Plukey Duke cases. These cases involved twenty-four defendants, the vast majority of whom were convicted of drug trafficking crimes. From my review of the record, it is clear that there is a great disparity in sentence length among defendants with similar degrees of involvement in the drug ring. The sentencing disparity results not from decisions made by the district judge, but from charging decisions and plea bargains made by the prosecutor. Moreover, some charging practices violate a defendant's right to due process. I turn first to the issue of disparity.

1. *The Proportionality of the Sentences.* The sentences imposed on drug traffickers in the Plukey Duke cases illustrate that sentencing disparity continues to exist under the guidelines, that defendants who go to trial pay a heavy premium for their choice, and that the prosecutor largely determines the sentence of the defendant by deciding who to charge, what to charge, and when to charge.[1] To illustrate these points, I initially present the following tables. Note that the defendants who pled guilty all received shorter sentences than those who went to trial.

| PLUKEY DUKE DEFENDANTS WHO WENT TO TRIAL | | |
|---|---|---|
| Defendant | Sentence | Probable Time Served[2] |
| Plukey Duke | 3 life terms | Same |
| Ralph Nunn | 25.0 yrs. | 21.4 yrs. |
| Doris Admon | 20.0 yrs. | 17.2 yrs. |
| Shawn Regan | 19.6 yrs. | 16.8 yrs. |
| Kevin Beal | 16.3 yrs. | 14.0 yrs. |
| Vicki Hammer | 15.7 yrs. | 13.5 yrs. |
| Serena Nunn | 15.7 yrs. | 13.5 yrs. |
| Kim Willis | 15.7 yrs. | 13.5 yrs. |
| Walter Hughes | 15.0 yrs. | 12.9 yrs. |

1. Once the matter reaches the district court, the court's authority to sentence is limited by the guidelines. This authority is not as limited as some district courts believe, but it is limited nonetheless.

2. While parole is not possible in a guidelines sentence, prisoners may receive 54 days good-time credit for each year of imprisonment exceeding one year. *See* 18 U.S.C. § 3624(b) (1988).

| PLUKEY DUKE DEFENDANTS WHO PLED GUILTY AND TESTIFIED AT ONE OR MORE OF THE DUKE TRIALS. | | |
| --- | --- | --- |
| **Defendant** | **Sentence** | **Probable Time Served** |
| David Youmans | 12.6 yrs. | 10.8 yrs. |
| Ramon Hutchinson | 9.0 yrs. | 7.8 yrs. |
| Joseph Ballard | 4.5 yrs. | 4.0 yrs. |
| Loren Duke | 1.0 yrs. | 1.0 yrs. |
| April Willis | .7 yrs. | .7 yrs. |

| PLUKEY DUKE DEFENDANTS WHO PLED GUILTY BUT DID NOT, BASED ON THE RECORD BEFORE US, TESTIFY AGAINST ANY OF THE DUKE DEFENDANTS. | | |
| --- | --- | --- |
| **Defendant** | **Sentence** | **Probable Time Served** |
| Larry Hutchinson | 8.1 yrs. | 7.0 yrs. |
| Marcel Duke | 3.4 yrs. | 3.1 yrs. |
| Theryl Dugas | 1.5 yrs. | 1.4 yrs. |
| Anthony Turner | 1.3 yrs. | 1.2 yrs. |
| Terry Shaw | .9 yrs. | .9 yrs. |
| Dionne Berry | .6 yrs. | .6 yrs. |

The guidelines anticipate that persons who plead guilty can expect to receive somewhat shorter sentences. This goal is to be achieved through the operation of a two-level reduction for acceptance of responsibility and downward departures for substantial assistance. *See* U.S.S.G. §§ 3E1.1 and 5K1.1; *see also* 18 U.S.C. § 3553(b) and U.S.S.G. § 5K2.0 (court may impose a sentence outside the guidelines range if it finds there exists a mitigating circumstance "of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines."). It was anticipated by Congress, however, that the adjustments were to be on the record for everyone to see. Moreover, the Department of Justice assured Congress and the public that pleas of guilty were to reflect the seriousness of the crimes committed. In many of these cases, however, neither condition was met. Individual cases flesh out this point and underscore the power of the prosecutor to control the sentence imposed. Consider first the case of Marvin McCaleb.

### Marvin McCaleb

Marvin McCaleb was Plukey Duke's partner in the drug conspiracy. He and Plukey Duke imported to Minnesota about twenty-five kilograms of cocaine a week during a four- to six-month period during 1988. The pair split the profits equally; McCaleb estimated his share was between $650,000 and $1,000,000.

McCaleb had been convicted of manslaughter at age 18 in 1978, of rape by force in 1979, and of possessing two grams of cocaine with intent to sell in 1989.

McCaleb admitted he had dealt drugs for four years and at times had moved 200 to 500 kilograms of cocaine a month.

McCaleb was arrested in California on December 28, 1988 for his role in the Plukey Duke drug conspiracy. Thereafter, he entered into a plea agreement with the federal authorities in Los Angeles. McCaleb promised he would aid the government in apprehending persons who sold narcotics and would testify against those persons. In return, the government agreed that if McCaleb pled guilty to conspiring to distribute eighteen kilograms of cocaine, it would dismiss an additional count which charged McCaleb with distributing twenty-five kilograms of cocaine. The government also promised it would recommend a pre-guidelines sentence of five to forty years for the California offenses. McCaleb would be eligible for parole after serving one-third of that sentence. *See* 18 U.S.C. § 4205(a) (1982) (repealed effective Nov. 1, 1987 by Pub.L. No. 98–473, tit. II, §§ 218(a)(5), 235, 98 Stat. 2027, 2031 (Oct. 12, 1984)). In addition, the United States Attorney's office in Minnesota agreed that it would not bring any additional charges in Minnesota. Had McCaleb been charged in Minnesota, he would have been subject to a guidelines sentence of at least twenty-seven years even if no upward adjustments were made for being a leader or organizer.[3]

McCaleb and Plukey Duke were the two major players in this drug conspiracy. Both distributed large amounts of cocaine for a long period of time. Although he has no prior criminal history, Plukey Duke will serve two life sentences for his crimes. In contrast, McCaleb has an extensive criminal history but will be subject to, at most, a forty-year preguidelines sentence. Because McCaleb cooperated with the government by testifying against Plukey Duke,

Vicki Hammer, and other defendants, he is unlikely to receive the maximum possible forty-year sentence.

The United States District Court for the District of Minnesota had no role in determining whether McCaleb would be charged in Minnesota. That decision was made only by the United States Attorney, and no Minnesota guilty plea will ever be entered by McCaleb in this case. As a result, the statistics compiled by the Sentencing Commission will never show the disparity wrought here by the government's favorable treatment of McCaleb or in countless similar cases throughout the country.[4] I well understand that the government must offer a benefit in order to get cooperation from offenders. This practice, however, results in substantial disparities among similarly situated offenders. The Sentencing Commission's statistics never measure such gross disparities and thus present only an illusion of precision and accuracy.

I also understand that the prosecutor needs broad charging discretion. I cannot agree, however, that this authority should be without limit under a guidelines system of sentencing. Because there is no oversight on charging decisions, McCaleb, a major participant, may well serve less time than anyone other than the very minor participants. This is wrong. The court and the public should be aware of what is being done in McCaleb's case and others like it.

McCaleb is not the only major participant who escaped a severe sentence. The case of Loren Duke also illustrates how the prosecutor's charging decisions affect the sentence imposed.

### Loren Duke

Loren Duke is a 23–year old nephew of Plukey Duke with one prior burglary con-

---

3. McCaleb admitted distributing at least 400 kilograms of cocaine into Minnesota, which would give him an offense level of 38. His criminal history category would be at least IV, so McCaleb's guidelines range would be 324 to 405 months.

4. The Sentencing Commission publishes statistics which show "compliance rates" or the percentages of sentences which are imposed within the guidelines range. *See* U.S. Sentencing Commission, Annual Report 1989 at 46–48. The fact that most defendants are sentenced within a guidelines range, however, "does not reveal anything about whether there is uniformity or disparity in the selection of the applicable range." Oberlies, *Reviewing the Sentencing Commission's 1989 Annual Report,* 3 Fed.Sent.Rep. 152, 153 (1990).

viction. Loren Duke was heavily involved in the drug distribution ring. He frequently acted as a drug courier and was involved in the purchase and delivery of more than thirty-five kilograms of cocaine. Loren Duke was originally charged with: (1) aiding and abetting an attempt to possess twenty kilograms of cocaine; and (2) conspiring to distribute more than five kilograms of cocaine. He conceded at trial that if he had been convicted on the above charges, he would have been subject to a guidelines sentence of twenty-three years.

The United States Attorney, however, offered Loren Duke a favorable plea bargain. It provided that the two counts in the indictment would be dropped in exchange for a plea to an information charging a violation of the "drug house" statute, 21 U.S.C. § 856(a)(1). This statute makes it unlawful to knowingly maintain a place for the purpose of manufacturing, distributing, or using any controlled substance. No mandatory minimum sentence is required for a violation of the "drug house" statute. Its offense level is 16 under the guidelines compared to an offense level of 34 for trafficking thirty-five kilograms of cocaine.

The probation office recommended that Loren Duke be given a two-level reduction for acceptance of responsibility. This reduced Duke's offense level to 14 with a sentencing range of 18 to 24 months. The government moved for a downward departure under section 5K1.1 for substantial assistance to authorities, and the district court sentenced Loren Duke to twelve months imprisonment.

While it is impossible to make precise comparisons among defendants, Loren Duke's twelve-month sentence should be viewed in relation to the 188–month sentence given to Kim Willis, a 20–year old man with no prior criminal record. It is clear from the record that Willis' involvement was no more extensive than that of Loren Duke, yet Willis received a sentence nearly sixteen times as long as Loren Duke's. While Loren Duke cooperated with the government, Willis also offered to cooperate, but his offer was rejected as not being timely.

Loren Duke's sentence should also be compared to the 188–month sentence given to Vicki Hammer. While Hammer was a courier and a facilitator of Plukey Duke's drug sales, she made no sales on her own (unlike Loren Duke), and her benefit from being a conspiracy member was simply being kept in luxurious circumstances by Plukey Duke.

The statistics compiled by the Sentencing Commission will never show these disparities. The statistics will not show that by charging Loren Duke with a "drug house" violation, the prosecutor in effect dictated that Loren Duke would be sentenced to no more than two and one-half years in prison. The district court's sole remaining discretion, the ability to grant or deny the government's section 5K1.1 motion, was really no discretion at all. Loren Duke had already been bargained down to a sentence far lower than what the district court might have imposed had Loren Duke been convicted of the serious drug distribution offenses the prosecutor dropped.

Two other mid-level drug distributors, Joseph Ballard and David Youmans, received favorable but less dramatic consideration from the prosecutor. Like Loren Duke, Ballard and Youmans both pled guilty, testified against Hammer, and received significantly lighter sentences than did Willis or Hammer.

### Joseph Ballard

Joseph Ballard is a 24–year old nephew of Plukey Duke. Ballard was deeply involved in the drug conspiracy. According to his testimony, Ballard transported at least nine kilograms of cocaine and more than $250,000 in drug money for Plukey Duke. Ballard did many other drug-related tasks for Plukey Duke.

Ballard originally was charged with: (1) distributing one kilogram of cocaine; (2) conspiring to distribute more than five kilograms of cocaine; and (3) carrying a .23 caliber rifle while conspiring to distribute the cocaine. If convicted of these offenses, Ballard would have faced a ten-year mandatory minimum on the conspiracy count,

and a consecutive five-year mandatory minimum sentence on the gun count.

The United States Attorney, however, offered to drop the gun count in return for a guilty plea to the two drug counts. In addition, the United States Attorney agreed that the offense conduct involved 3.5 to 4.9 kilograms of cocaine. By doing this, the United States Attorney ensured that Ballard would not be subject to a ten-year mandatory minimum sentence. Ballard accepted this offer and testified at Hammer's trial. The United States Attorney subsequently made a section 5K1.1 motion to reward Ballard's assistance, and the district court sentenced Ballard to fifty-four months, well below the guidelines range of 78 to 97 months contemplated by the stipulated offense conduct.

### David Youmans

David Youmans was one of Plukey Duke's distributors and bought cocaine in kilogram-size quantities from Plukey Duke and other sources. Youmans was charged with: (1) distributing three ounces of cocaine; and (2) conspiring with intent to distribute more than five kilograms of cocaine. Youmans had two previous drug convictions, and he faced a mandatory minimum sentence of life imprisonment if convicted of the conspiracy count. *United States v. Youmans*, 926 F.2d 747, 748 (8th Cir.1991).

The United States Attorney, however, offered Youmans a plea bargain in which the government agreed that Youmans conspired to distribute between 3.5 and 5 kilograms of cocaine. This offer allowed the government to circumvent the mandatory minimum sentence. In addition, the government agreed to make motions under section 5K1.1 and 18 U.S.C. § 3553(e) if Youmans cooperated and agreed to provide truthful testimony at trials involving coconspirators. Youmans accepted this offer. The district court granted the government's motion under 18 U.S.C. § 3553(e) and sentenced Youmans to 151 months imprisonment.

I wish to make it clear that I have no quarrel in the abstract with the sentences imposed on Youmans or Ballard. Their sentences are certainly substantial. Rather, my objection is that defendants like Willis and Hammer, who went to trial but who were no more culpable than Youmans and Ballard, received much more severe sentences.

Disparity is not limited to that between defendants who plead guilty and those who go to trial. In addition, similarly situated defendants who plead guilty may receive vastly different sentences due to charging decisions made by the prosecution. To illustrate this point, I offer the examples of Larry Hutchinson and Anthony Turner, both of whom participated in and were arrested during a twenty-kilogram reverse-sting cocaine transaction. Neither Hutchinson nor Turner had prior criminal records. Neither Hutchinson nor Turner testified at the Plukey Duke trials. The district court found both to be minor participants in the criminal activity. Both were young; Turner was 21 and Hutchinson 18. Turner, however, received a sentence five times shorter than Hutchinson because prosecutors permitted Turner to plead to the "drug house" statute. In contrast, Hutchinson pled guilty to the drug distribution counts, which the prosecutor dropped as to Turner.

### Larry Hutchinson

Larry Hutchinson was charged with: (1) aiding and abetting others in attempting to possess and distribute twenty kilograms of cocaine; and (2) conspiring to possess with intent to distribute more than five kilograms of cocaine. In addition, Hutchinson was charged with carrying a loaded 9mm pistol while attempting to possess the cocaine. If convicted of these three offenses, Hutchinson could have faced a ten-year mandatory minimum sentence for the drug counts and a five-year consecutive mandatory minimum sentence on the gun count, for a total of fifteen years. *See United States v. Hutchinson*, 926 F.2d 746 & n. 2 (8th Cir.1991).

The United States Attorney, however, offered Hutchinson a plea bargain, which Hutchinson accepted. The agreement was

based on Hutchinson's willingness to testify as to his knowledge of others involved in criminal activity. The plea agreement limited the offense conduct to between 3.5 and 5 kilograms of cocaine and set the offense level at 30. *Id.* The probation office noted that it found no basis in the record for limiting Hutchinson's involvement to 3.5 to 5 kilograms of cocaine. The district court, however, accepted the plea agreement and sentenced Hutchinson to ninety-seven months imprisonment.

### Anthony Turner

Like Hutchinson, Anthony Turner was charged with: (1) aiding and abetting others in the attempt to possess and distribute approximately twenty kilograms of cocaine; and (2) conspiring to possess with intent to distribute five or more kilograms of cocaine. Like Hutchinson, Turner faced a ten-year mandatory minimum sentence if convicted of these two offenses, although Turner did not face a gun count.

Pursuant to a plea bargain, however, the government dropped these two distribution charges. In return, Turner pled guilty to an information charging that he violated the "drug house" statute, 21 U.S.C. § 856(a)(1). The district court imposed a guidelines sentence of fifteen months.

The record does not reveal why Turner, but not Hutchinson, received this deal. Other than the gun count, the pair appear to be equally culpable. Although both sentences were within the guidelines, the disparity between these two defendants' sentences will never appear in the Sentencing Commission's statistics.

2. *Charging Practices and Due Process.* I believe the due process aspect of the prosecutor's charging decisions needs to be examined more closely. In one sense, I commend the prosecutor's charging practices here: the indictment specified that Hammer conspired to distribute five or more kilograms of cocaine, giving Hammer notice that she faced a mandatory minimum sentence of ten years. *See* 21 U.S.C. § 841(b)(1)(A)(ii) (1988). I believe amounts which trigger a mandatory minimum sentence should always be charged if the prosecutor seeks such a sentence, and the prosecutor did that here. Moreover, the indictment also specified the amounts of cocaine involved in the substantive counts, a practice which also should be followed more frequently. *Compare United States v. Payne,* 940 F.2d 286, 293 (8th Cir.1991) (Heaney, J., concurring and dissenting) (indictment neither specified amounts of cocaine nor alleged anywhere that crack was involved).

The prosecutor, however, was aware before trial that Hammer had been involved with fifty or more kilograms of cocaine. Because fifty kilograms is a breakpoint in the guidelines that requires a substantially longer sentence than the five kilograms charged, there is no good reason why the prosecutor could not have charged this higher amount. Had the prosecutor done so, Vicki Hammer would have been fully aware of the seriousness of the charge against her, and a jury finding of guilty would have eliminated any controversy with respect to the extent of her involvement in the conspiracy. In my view, the failure to charge the total amount of drugs involved is a denial of due process in cases where this factor makes a substantial difference in the time to be served by a defendant. *See Payne,* 940 F.2d at 295. This issue, however, is not raised on appeal.

3. *The Presentence Report.* Finally, I note some concerns about the presentence report in Hammer's case. The report prepared by the probation office recounted in detail the quantities of cocaine (106 kilograms) which it thought should be attributed to Hammer for sentencing purposes. I cannot understand how the probation office could have prepared an accurate report on this point. The general policy of the office is not to sit in during a trial, and a transcript of the trial was not available at the time the presentence report was prepared. Necessarily then, the probation office relied on the prosecutor's file to determine amounts, a practice which gives rise to additional due process questions. Here, however, I discern no prejudice as a result of the practice, because the sentencing

court indicated at the sentencing hearing that it relied primarily on its own recollection of the trial testimony in determining the extent of Hammer's involvement.

The probation office has an important contribution to make in presentence reports in cases which go to trial. It should assist the court in arriving at an offense level computation based on the trial court's finding as to drug quantities, it should recite the defendant's criminal history, and it should report to the court any other information which may be pertinent to sentencing. Unless it sits in on the trial, however, I do not believe it should summarize trial testimony.

## CONCLUSION

I repeat what I stated earlier: Hammer's 188–month sentence is supported by the record. That said, I continue to be concerned about how the guidelines permit the prosecutor to virtually dictate the sentence imposed. I am concerned about how disparities persist under the guidelines. I am concerned about how these disparities are hidden from plain view, never to be revealed by the Sentencing Commission's statistics and that these hidden, nonreviewable disparities will continue to frustrate the goal of the sentencing guidelines.