**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Juan David VILCHEZ, Defendant–
Appellee.**

**No. 91–50429.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 6, 1992.

Decided June 23, 1992.

As Amended July 9, 1992.

Alfredo X. Jarrin, Asst. U.S. Atty., Los Angeles, Cal., for plaintiff-appellant.

Terry Amdur, Pasadena, Cal., for defendant-appellee.

Before: TANG, SCHROEDER, and BEEZER, Circuit Judges.

TANG, Circuit Judge:

During a joint undercover operation between the federal government and the Los Angeles Police Department ("L.A.P.D."), law enforcement officials witnessed, at different times, Jose Mondron and Juan Vilchez dealing in heroin. Mondron was arrested and prosecuted in California state court. Vilchez was arrested several months later and prosecuted in federal court. Vilchez subsequently pleaded guilty to the distribution of heroin. At sentencing, the district court departed downward below both the applicable Sentencing Guidelines range and the statutorily mandated minimum sentence. The district court explained that its decision to depart downward was necessary to avoid disparity between Mondron's and Vilchez's sentences. The government appeals the downward departure. We vacate and remand for resentencing.

## BACKGROUND

On June 20, 1990, the L.A.P.D. arrested Jose Mondron after he and Jose Gamez arranged a sale of heroin with a confidential informant. Mondron had in his possession at the time of arrest 465 grams of heroin. The undercover operation that netted Mondron was a joint investigation conducted by the L.A.P.D. and the federal government. Mondron was prosecuted in state court, where he pleaded guilty and received a two-year sentence.

In the meantime, the joint undercover operation continued. In late September 1990, officers observed Vilchez, Gamez, and Luis Valencia make repeated sales of heroin to an undercover officer.

Vilchez, Gamez, and Valencia were arrested. Unlike Mondron, however, charges against them were filed in federal court.[1] On April 3, 1991, Vilchez pled guilty to one count of distributing 301 grams of heroin, in violation of 21 U.S.C. § 841(a)(1).

Because Vilchez was prosecuted in federal, rather than state, court, the United States Sentencing Guidelines and a federal mandatory minimum statute strictly constrained his potential sentence. At the sentencing hearing on June 20, 1991, the district court calculated Vilchez's Sentencing Guidelines range to be 51–63 months. Additionally, federal law required a five-year mandatory minimum sentence for Vilchez's crime. 21 U.S.C. § 841(b)(1)(B).

At Vilchez's sentencing hearing, the district court departed downward from the Guidelines and section 841(b)(1)(B) and sentenced Vilchez to three years imprisonment. The court explained that it departed

---

1. The three were originally charged in state court. Those charges were soon dropped in favor of the federal prosecution.

in an effort to reduce the disparity between Mondron's and Vilchez's sentences.

■ On July 2, 1991, the government filed a motion for reconsideration. On July 29, 1991, the district court denied the motion, reiterating its desire to reduce sentencing disparity attributable solely to prosecutorial decision-making. The district court also noted that, because the government had filed a notice of appeal ten days earlier, the court probably did not have jurisdiction to rule on the motion for reconsideration.[2]

The government timely noticed its appeal to this court of the district court's downward departure and failure to enforce section 841(b)(1)(B)'s mandatory minimum sentence.

## STANDARD OF REVIEW

■ In evaluating the district court's decision to depart downward from the Sentencing Guidelines range, we review de novo the district court's determination that it had the authority to depart. *United States v. Floyd*, 945 F.2d 1096, 1098 (9th Cir.1991), *amended*, 956 F.2d 203 (9th Cir. 1992); *see also United States v. Lira–Barraza*, 941 F.2d 745, 746 (9th Cir.1991) (en banc). We review the factual findings upon which the departure is predicated for clear error and the extent of the departure for reasonableness. *Floyd*, 945 F.2d at 1099; *Lira–Barraza*, 941 F.2d at 746–47.

■ Whether the district court had the authority to depart below a statutory mandatory minimum sentence involves questions of statutory construction and constitutional law. Accordingly, we apply de novo review. *See Home Sav. Bank, F.S.B. v. Gillam*, 952 F.2d 1152, 1156 (9th Cir. 1991) (questions of statutory construction reviewed de novo); *Carreras v. City of*

*Anaheim*, 768 F.2d 1039, 1042 n. 2 (9th Cir.1985) (questions of constitutional law reviewed de novo).

## DISCUSSION

### I. *Departure from the Sentencing Guidelines*

■ The district court reasoned that avoiding a sentencing disparity between similarly situated state and federal defendants constitutes a proper basis for departure from the Guidelines. We cannot agree.

In order to depart downward from the sentencing range prescribed by the Sentencing Guidelines, the district court must identify a mitigating circumstance "of a kind or to a degree that the Sentencing Commission did not adequately take into account when formulating the Guidelines." *Floyd*, 945 F.2d at 1098. The desire to equalize defendants' sentences, however, "is not a factor specified in the Guidelines [as a permissible basis for departure], nor is it one we can say was overlooked." *United States v. Enriquez–Munoz*, 906 F.2d 1356, 1359 (9th Cir.1990). Indeed, we have specifically held that district courts may not depart downward for the purpose of avoiding unequal treatment of co-defendants. *United States v. Reyes*, 966 F.2d 508, 510 (9th Cir.1992); *United States v. Mejia*, 953 F.2d 461, 468 (9th Cir.1991), *cert. denied*, — U.S. —, 112 S.Ct. 1983, 118 L.Ed.2d 581 (1992); *see also United States v. Monroe*, 943 F.2d 1007, 1017 (9th Cir.1991) ("[O]ur cases suggest that the desire to equalize sentences may be an impermissible basis for departure."), *cert. denied*, — U.S. —, 112 S.Ct. 1585, 118 L.Ed.2d 304 (1992); *United States v. Hoy*, 932 F.2d 1343, 1345 (9th Cir.1991) ("This court has ruled, however, that a disparity in sentencing among co-defendants is not,

---

**2.** Unlike civil cases, the government's notice of appeal was effective, even though it was filed before the district court ruled on its motion for reconsideration. *Compare* Fed.R.App.P. 4(a)(4) *with* Fed.R.App.P. 4(b). *See also United States v. Cortes*, 895 F.2d 1245, 1246–47 (9th Cir.), *cert.*

*denied*, 495 U.S. 939, 110 S.Ct. 2191, 109 L.Ed.2d 519 (1990); *cf. United States v. Davis*, 960 F.2d 820, 824 (9th Cir.1992). The government did not need to file a new notice of appeal after the motion for reconsideration was denied. *Cortes*, 895 F.2d at 1246–47.

by itself, a sufficient ground for attacking an otherwise proper sentence under the guidelines.").

In *Monroe,* we rejected the argument that departure is warranted to equalize sentences " 'where the lighter sentences of [the defendant's] coconspirators either arise out of a different court or from different laws.' " 943 F.2d at 1017 (quoting and expressly agreeing with *United States v. Richardson,* 901 F.2d 867, 869 (10th Cir. 1990)). Similarly, the fact that one defendant arrested in an earlier phase of the same undercover operation received a lesser sentence than Vilchez, due to being sentenced in "a different court" and under "different laws," does not provide a basis for the district court's downward departure in this case. *See also Enriquez–Munoz,* 906 F.2d at 1360 ("The uniformity the Guidelines sought was designed to come from the specific provisions of the Guidelines itself, not from giving judges a broad discretion to ignore the Guidelines and increase sentences based on extraneous factors such as the punishment meted out to a co-defendant.").

The district court relied primarily on our decision in *United States v. Ray,* 930 F.2d 1368 (9th Cir.1990) (amended opinion), in deciding to depart. In *Ray,* we upheld a departure under the "unique" circumstance where one co-defendant was sentenced under the Sentencing Guidelines while the other co-defendants were sentenced in accord with pre-Guidelines practice. *Id.* at 1372. The disparity resulted from an intervening Supreme Court decision reversing our determination that the Sentencing Guidelines were unconstitutional. The *Ray* court qualified its decision by noting:

> We do not hold that the desire to equalize punishment among codefendants who are all sentenced under the Guidelines is a permissible concern.... Rather, we hold that in the unique situation where one defendant is sentenced under the Guidelines while the others are sentenced under a different legal regime, the dis-

trict court may find "highly unusual" circumstances that support a departure. *Id.* at 1372 n. 7. In Vilchez's case, the district court concluded that the government's decision to leave one case in state court while removing the others to federal court constituted just such a "highly unusual circumstance[ ]."

The district court erred in extending *Ray* to the present situation, for three reasons. First, *Ray* concerned disparate sentences imposed on co-defendants by the same court system and the same sovereign. The Sentencing Guidelines' interest in decreasing sentence disparity concerns only the sentences meted out by federal courts. The Sentencing Reform Act aimed to achieve "uniformity in sentencing by narrowing the wide disparity in sentences imposed by different *federal courts* for similar criminal conduct by similar offenders." United States Sentencing Commission, *Guidelines Manual,* ch. 1, part A, intro. (Nov.1989) (emphasis added), *quoted in United States v. Changa,* 901 F.2d 741, 743–44 (9th Cir.1990). Contrary to the district court's suggestion, the Sentencing Guidelines were neither intended nor designed to hew out a rough parity between federal and state defendants.

Second, *Ray* recognized that co-defendants being prosecuted for the same criminal conduct by the same sovereign might reasonably expect that their punishments will be comparable. The *Ray* court sought to achieve that general equalization of sentences among federal defendants for which the Sentencing Guidelines strive.

The district court's decision in this case, by contrast, drastically increases the disparity between federal defendants' sentences in the name of a goal—federal/state sentence equalization—that neither Congress nor the Sentencing Guidelines has recognized. Most federal defendants who have committed the same crime as Vilchez have received prison terms at least two years longer than his, in accord with the mandate of 21 U.S.C. § 841(b)(1)(B). *See Mejia,* 953 F.2d at 468 ("A downward de-

parture to correct sentencing disparity brings a defendant's sentence more into line with his or her codefendant's sentence, but places it out of line with sentences imposed on all similar offenders in other cases.... The greater uniformity trumps the lesser disparity."); *United States v. Wogan,* 938 F.2d 1446, 1449 (1st Cir.) ("[R]educing a defendant's sentence ... to equalize his sentence with one previously imposed on a codefendant promotes, rather than reduces, nationwide disparities by creating a new and entirely unwarranted disparity between the defendant's sentence and that of all similarly situated defendants throughout the country.") (quotation omitted), *cert. denied,* — U.S. —, 112 S.Ct. 441, 116 L.Ed.2d 460 (1991) see also *Reyes,* at 510.

Only the fortuitous circumstance that the federal government left one defendant arrested in an earlier phase of the same investigation in state court explains the different sentences for Vilchez and other federal defendants. The sentence disparity, in other words, has nothing to do with Vilchez's culpability, criminal history, or personal eligibility for a sentence in conformity with federal law. Under the district court's reasoning, a state criminal code's relative leniency would effectively veto an otherwise reasonable and legitimate federal sentence. The district court's decision thus impedes, rather than promotes, the Sentencing Guidelines' quest for uniform sentences.

Third, we doubt that these facts fit *Ray's* "highly unusual" circumstances test. Joint state/federal investigations are common in the criminal arena. Treating separate state/federal prosecutions as a basis for departure, however, would threaten to curtail sharply such cooperation. Fearing a dilution of federal sentences, federal prosecutors might feel obliged to bring all criminal defendants to federal court regardless of resource pressures or the desire of local prosecutors to vindicate state criminal code prohibitions in their own courts in the first instance.

In short, we hold that the desire to equalize state and federal sentences does not constitute a permissible basis for departure. Numerous prior decisions of this court counsel against predicating departure on the disparity between co-defendants' sentences. Their reasoning applies with even greater force here, where departure actually increases disparities between federal defendants.

## II. *Departure from the Statutory Mandatory Minimum Sentence*

■ The government also challenges the district court's failure to impose the mandatory five-year minimum sentence required by 21 U.S.C. § 841(b)(1)(B). We agree that the district court erred in failing to enforce the mandatory minimum sentence applicable to Vilchez's crime.

Congress has expressly circumscribed the authority of district courts to sentence below statutorily-mandated minimum terms of imprisonment. Section 3553(e) of 18 U.S.C. instructs that:

Upon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense.

We have ruled that a "motion of the Government" generally is a prerequisite to departure under section 3553(e). *United States v. Keene,* 933 F.2d 711, 713 (9th Cir.1991); *United States v. Sharp,* 883 F.2d 829, 831 (9th Cir.1989); *United States v. Ayarza,* 874 F.2d 647, 653 (9th Cir.1989), *cert. denied,* 493 U.S. 1047, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990). No such motion was made by the government in this case. The district court was thus presumptively without power to circumvent the mandatory minimum.

Departure absent a motion by the government is appropriate in only very limited circumstances. In *Wade v. United States,* — U.S. —, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992), the Supreme Court held that departure from the mandatory minimum prescribed by 21 U.S.C. § 841(b)(1)(B) may be appropriate if the government's failure to make the motion is unconstitutionally motivated. — U.S. at —, 112

S.Ct. at 1842. Similarly, a district court may depart under section 3553(e) if the government's "refusal to move was not rationally related to any legitimate Government end." *Id.* at ——, 112 S.Ct. at 1844.

This exception to the general requirement that a motion by the government precede the district court's departure from a statutorily-imposed minimum sentence is of no help to Vilchez. The district court neither found nor implied that the government acted with such arbitrariness or vindictiveness in taking Vilchez to federal court as to amount to a constitutional violation. More specifically, the district court made no findings indicating that the prosecution decision was irrational or inspired by an illicit motivation. The district court found only that the sentences were different while the crime was essentially the same.

Nor do the facts of this case paint a clear picture of constitutional infringement. Mondron and Vilchez were not arrested together and were not named as co-defendants. They were not convicted of engaging in the same underlying criminal transaction. Indeed, Mondron was convicted of criminal activity occurring three months before law enforcement officials first surveilled Vilchez in a drug deal. Vilchez does not contend that the decision to prosecute him was the product of illicit discrimination or retaliation for his exercise of constitutional or statutory rights. Absent such improper motivations, a federal prosecutor's decision to prosecute one defendant and not another "generally rests entirely in [her or] his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Furthermore, a showing that the prosecutor was "influenced by the penalties available upon conviction," standing alone, "does not give rise to a violation of the Equal Protection or Due Process Clause." *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2205, 60 L.Ed.2d 755 (1979). A criminal defendant "has no constitutional right ... to choose the penalty scheme under which he will be sentenced." *Id.; see also Ayarza*, 874 F.2d at 653 (Constitution permits Congress to lodge some measure of sentencing discretion with the prosecutor).

Other federal courts of appeals have held that prosecutorial discretion embraces the decision to prosecute in federal rather than state court, regardless of whether that confronts the defendant with the risk of stiffer penalties. *United States v. Andersen*, 940 F.2d 593, 596–97 (10th Cir.1991); *United States v. Turpin*, 920 F.2d 1377, 1388 (8th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1428, 113 L.Ed.2d 480 (1991).

We agree with the Eighth and Tenth Circuits. Where there is no evidence of improper motivation or of a constitutional violation, federal court supervision of a prosecutor's decision to proceed against one defendant and not another would open a Pandora's Box. Decisions concerning resource allocation, law enforcement priorities, and cooperative relations between state and federal prosecutors are best left to the executive branch unless there has been a showing of illegal or abusive prosecutorial practices.

## CONCLUSION

The sentence imposed by the district court is vacated and the case remanded for resentencing. Equalization of state and federal defendants' sentences is not a proper basis for departure from the Sentencing Guidelines. Furthermore, because the government made no motion and Vilchez did not evidence abusive prosecutorial tactics, the district court lacked the legal authority to disregard the statutory mandatory minimum sentence applicable to Vilchez's conduct.

VACATED and REMANDED.