**UNITED STATES of America, Appellee,**

v.

**James Larry DEITZ, Appellant.**

No. 92–2822.

United States Court of Appeals, Eighth Circuit.

Submitted Nov. 11, 1992.

Decided April 13, 1993.

Rehearing and Rehearing En Banc Denied May 19, 1993.

---

Jeff Rosenweig, Little Rock, AR, for appellant.

Patrick C. Harris, Little Rock, AR, for appellee.

Before FAGG, Circuit Judge, BRIGHT, Senior Circuit Judge, and HANSEN, Circuit Judge.

HANSEN, Circuit Judge.

A jury convicted James Larry Deitz of one count of possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841 ("drug charge") and one count of use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("firearm charge"). The district court[1] sentenced Deitz to a 41–month term of imprisonment on the drug charge and a consecutive 60–month term of imprisonment on the firearm charge followed by a three-year period of supervised release. Deitz appeals, challenging the indictment, the firearm conviction, and his sentence. We affirm.

## I.

In September 1990, Arkansas state law enforcement officers executed a search warrant at the defendant's home. Pursuant to this search, the officers seized several small bags of methamphetamine, drug paraphernalia, prerecorded "buy money," and four firearms. Based on this evidence, the State of Arkansas brought criminal

---

1. The Honorable G. Thomas Eisele, Senior United States District Judge for the Eastern District of Arkansas.

drug charges against Deitz. The State, however, failed to prosecute the charges within the time limits prescribed by the Arkansas speedy trial statute, and the charges against Deitz were dismissed with prejudice. The State informed the United States Attorney's office of the dismissal, and the federal government then sought and obtained an indictment against Deitz. The federal charges were based on the same drug trafficking activities that comprised the state law charges. The federal indictment also included a firearm charge.

Deitz raises three issues on appeal. First, he asserts that the district court erred in failing to dismiss the federal indictment as violative of the Double Jeopardy Clause. Second, he argues that the district court erred in failing to grant his motion for judgment of acquittal on the firearm charge. Third, Deitz challenges the district court's refusal to make a downward departure in his sentence.

## II.

Deitz asserts that because the State of Arkansas dismissed the charges against him with prejudice, the federal prosecution based on the same conduct violates his right to be free from double jeopardy. The Fifth Amendment to the United States Constitution reads in part: "nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb...." The district court found that Deitz had never been prosecuted by the State of Arkansas. Because "[t]he double jeopardy clause does not protect individuals from being indicted twice," the district court concluded that the federal indictment did not violate Deitz's Fifth Amendment right to be free from double jeopardy. We agree.

■ In *Abbate v. United States*, 359 U.S. 187, 79 S.Ct. 666, 3 L.Ed.2d 729 (1959), the United States Supreme Court held that the Double Jeopardy Clause did not bar federal prosecution of defendants who had already been prosecuted for the same acts by the state. *See also United States v. Woodard*, 927 F.2d 433, 435 (8th Cir.) (federal and state crimes of drug possession are two separate offenses "notwithstand-ing the fact that the two charges are based on the same act"), *cert. denied,* — U.S. —, 112 S.Ct. 246, 116 L.Ed.2d 201 (1991). Dual sovereigns, deriving their power from different sources, enforce their own set of laws as independent sovereigns. *See Abbate*, 359 U.S. at 194, 79 S.Ct. at 670 (citing *United States v. Lanza*, 260 U.S. 377, 382, 43 S.Ct. 141, 142, 67 L.Ed. 314 (1922)). The mere fact that the State of Arkansas and the federal government both brought charges against Deitz does not amount to double jeopardy.

■ Deitz nevertheless argues that the actions of the state and federal governments amounted to a "sham prosecution" conducted in federal court thus voiding his conviction. *See Bartkus v. Illinois*, 359 U.S. 121, 79 S.Ct. 676, 3 L.Ed.2d 684 (1959). In *Bartkus* the state government prosecuted the defendant after he had been acquitted on federal charges based on substantially the same set of facts. Upholding the propriety of the state prosecution, the Court noted that there had been no indication that the state had acted as a mere tool of the federal government in order to sidestep the prohibition against double jeopardy. *Id. See also, United States v. Bartlett*, 856 F.2d 1071, 1074 (8th Cir.1988) (citations omitted). Deitz has alleged no more than that the federal government admits it likely would not have brought federal charges had the prosecution been carried out at the state level, regardless of whether Deitz was convicted of the state charges. Deitz argues, in essence, that the federal government simply acted as a back-up prosecutor for the State of Arkansas when the latter failed to meet the state speedy trial time limits. Without more, such an allegation cannot prove the existence of a sham prosecution. Were this enough, almost every prosecution instigated by the federal government after a defendant had been indicted on state charges would be improper. Similarly, Deitz fails to support his assertion that "the reprosecution also violates the due process ban against vindictive prosecutions" with any facts whatsoever. We agree with the district court that Deitz

was victim of neither a sham nor a vindictive prosecution.

▆▆ Furthermore, Deitz was never prosecuted for the state charges, and thus jeopardy never attached. In fact, both parties agree that the federal charges were brought *because* the State of Arkansas had *not* prosecuted the state charges within the statutory time limits. Jeopardy does not attach until a jury is sworn, *Lomax v. Armontrout*, 923 F.2d 574, 576 (8th Cir.) (citing *Serfass v. United States*, 420 U.S. 377, 388, 95 S.Ct. 1055, 1062, 43 L.Ed.2d 265 (1975)), *cert.denied*, — U.S. ——, 112 S.Ct. 60, 116 L.Ed.2d 36 (1991), and no jury was ever empaneled to hear the state charges filed against Deitz. While we recognize the uneasiness Deitz may have experienced during the time his state speedy trial clock was ticking, nervous anxiety alone, however severe, does not cause jeopardy to attach. We affirm the district court's refusal to dismiss the indictment on Double Jeopardy grounds.

### III.

▆▆ Deitz also challenges his conviction on the firearm charge, asserting that he was entitled to a judgment of acquittal at the close of the evidence. Specifically, Deitz asserts that the government failed to introduce sufficient evidence to show he "used" a firearm "during and in relation to" the drug trafficking crime of which he was convicted. Because Deitz challenges the denial of his motion for judgment of acquittal on the sufficiency of the evidence, we must view the evidence in a light most favorable to the government. *United States v. Bordeaux*, 980 F.2d 534 (8th Cir. 1992) (citation omitted). We will reverse only if a reasonable jury must have had reasonable doubt as to the existence of any element of the charged offense. *United States v. Starcevic*, 956 F.2d 181, 183–84 (8th Cir.1992) (citing *United States v. Powell*, 853 F.2d 601, 604 (8th Cir.1988)).

▆▆ In challenging his firearm conviction, Deitz asserts that *United States v. LaGuardia*, 774 F.2d 317 (8th Cir.1985) should no longer be relied upon in determining when an individual "uses" a firearm

for § 924(c) purposes. In *United States v. LaGuardia* this court held that "[t]he presence and availability in light of the evident need" may be sufficient to establish "use" under § 924(c). *Id.* at 321. The defendant in *LaGuardia* was convicted under an earlier version of the firearm statute, which prohibited the use of a firearm "to commit any felony." The current version, in contrast, prohibits use of a firearm "during and in relation to" a drug trafficking crime. Deitz argues that this difference renders *LaGuardia* inapplicable to firearm cases based on the new version of § 924(c). We disagree.

In *United States v. Matra*, 841 F.2d 837, 842 n. 8 (8th Cir.1988), this court held that because the firearm statute still contains the word "use," the standard enunciated in *LaGuardia* may be applied to the amended version of § 924(c) as well. *See also United States v. Curry*, 911 F.2d 72, 79 n. 6 (8th Cir.1990) ("Because the 'use' element has remained the same under the current version of § 924(c)(1), 'the *LaGuardia* case retains its precedential value.' ") (citing *Matra*, 841 F.2d at 842 n. 8), *cert. denied*, 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991). The jury heard evidence that drugs, prerecorded buy money, drug paraphernalia, and four loaded firearms were found at Deitz's house during the search. Two of the firearms were shotguns located in the bedroom, which was the same room where a large portion of the methamphetamine was found as well. One of the shotguns was a sawed-off one, fully loaded and operable. The officers also found a .38 caliber gun, a .22 pistol, a device for grinding narcotics, scales, cutting agents, and several "zip-lock baggies" in various locations throughout the house. Finally, the officers found the prerecorded buy money in varying amounts in the disk compartment of a computer, in Deitz's wallet, and on Deitz's person. Based on this evidence, the jury determined beyond a reasonable doubt that Deitz "used" a firearm "during and in relation to" the drug charge. Because Deitz challenges his conviction on the sufficiency of the evidence, our review is limited. *See Starcevic*, 956 F.2d at 184.

Viewing the evidence in a light most favorable to the government and granting the government the benefit of all reasonable inferences to be drawn from the evidence, we find no basis upon which to disturb the conviction. We affirm.

Deitz also asks the court to adopt what he refers to as the *"Lyman* test" for the purpose of determining "use" under § 924(c). *See United States v. Lyman,* 892 F.2d 751 (8th Cir.1989), *cert. denied,* 498 U.S. 810, 111 S.Ct. 45, 112 L.Ed.2d 21 (1990). This court addressed a similar request in *United States v. Curry,* 911 F.2d 72 (8th Cir.1990), *cert. denied,* 498 U.S. 1094, 111 S.Ct. 980, 112 L.Ed.2d 1065 (1991), and declined to adopt the test enunciated in *United States v. Feliz–Cordero,* 859 F.2d 250, 254 (2d Cir.1988), and referred to in *Lyman* as the law of this circuit. We note that a panel of this circuit recently relied on *Lyman* to uphold a § 924(c) conviction where the defendant had the guns readily available for protection during the course of his drug operation. *United States v. Boykin,* 986 F.2d 270, 274–275 (8th Cir.1993). Without referring to the two-part *Lyman* test, the Boykin panel looked to "whether the placement of the gun or guns suggests that they would be quickly available for use in an emergency." *Id.* (citing *Lyman,* 892 F.2d at 754 n. 4). Deitz had a loaded, operable sawed-off shotgun readily available in the bedroom where several containers of drugs were stored. *Boykin* discusses a gun's general availability during an emergency, not the two-part *Lyman* test that Deitz urges us to adopt. As a result, we affirm Deitz's conviction on the firearm charge and see no reason to address his contentions regarding the *Lyman* test any further.

### IV.

▄ Finally, Deitz asserts that the district court erred in finding it lacked the authority to make a downward departure in Deitz's sentence imposed for the drug charge. Generally, a district court's decision not to depart from the Guidelines is unreviewable on appeal. *United States v. Evidente,* 894 F.2d 1000, 1003–05 (8th Cir.)

(discretionary decisions not to depart are not subject to appellate review), *cert. denied,* 495 U.S. 922, 110 S.Ct. 1956, 109 L.Ed.2d 318 (1990); *see also* 18 U.S.C. § 3742(e). This court does, however, have jurisdiction to review a district court's determination that it lacks the authority to consider a particular mitigating factor in making a downward departure. *United States v. Whitetail,* 956 F.2d 857, 862 (8th Cir.1992) (citations omitted). In this case, Deitz requested a downward departure based on the potential disparity between the theoretical sentence he might have received had he been convicted in state court and the sentence he received as a result of his conviction on the federal drug charge. Deitz asserts that this potential disparity is a circumstance not adequately taken into consideration by the Guidelines. On this basis, he requested a downward departure in his sentence. *See* 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. The district court refused to depart, specifically finding it lacked the authority to do so under the Guidelines. We agree with the district court and affirm Deitz's sentence.

▄ Whether a potential disparity between an actual federal and a theoretical state-imposed sentence may be considered a "mitigating factor" under the Guidelines for departure purposes is an issue of first impression for this court. If, at the time of sentencing, federal courts were to take into consideration a potential state sentence based upon similar state-charged offenses, the Sentencing Commission's goal of imposing uniformity upon federal sentences for similarly situated defendants would be impeded, not furthered. *Accord United States v. Vilchez,* 967 F.2d 1351 (9th Cir. 1992) (sentencing disparity between federal defendant and similarly situated state defendant not a proper basis for departure); *see United States v. Haynes,* 985 F.2d 65 (2d Cir.1993); U.S.S.G. Ch. 1, Pt. A(3). Indeed such an approach would fracture the uniform national system for sentencing a particular federal crime into one which would impose fifty potentially different sentence permutations for that same crime and it would create the very kind of sentencing disparity the Congress sought to

avoid by creating the Sentencing Guidelines system. The Commission must have recognized the possibility that a defendant might be subject to prosecution in both a state and a federal forum for the same criminal activity. Choice of forum, however, is a decision that lies safely within the realm of prosecutorial discretion, and the Guidelines were not designed to make inroads into this exclusive territory of the executive branch. *Haynes,* 985 F.2d at 69–70. Rather, "[t]he Commission wrote guidelines for an existing system of criminal procedure; it almost certainly did not intend that decisions traditionally in the prosecutor's ken, and within constitutional bounds, be counterbalanced by a sentencing court." *United States v. Dockery,* 965 F.2d 1112, 1117 (D.C.Cir.1992); *see also Haynes,* 985 F.2d at 70 (disparity between state and federal sentence "is not the sort of atypical or unusual factor meriting departure").[2] As a result, we hold that the possible discrepancy between state and federal sentences is a factor the Commission considered but chose not to account for in the Guidelines. The district court properly found it lacked the authority to depart from the Sentencing Guidelines on this basis. We affirm.

## V.

We hold that the district court properly denied defendant's motion to dismiss the indictment and his motion for judgment of acquittal on the firearm charge. We also hold that the district court properly concluded that it lacked authority to depart from the Sentencing Guidelines based on a possible disparity between the federal and a theoretical state sentence when imposing Deitz's sentence on the drug charge. Accordingly, we affirm both of Deitz's convictions and his sentences.

**2.** We note, once again, that Deitz was only prosecuted in federal court after the state charges were dropped. His argument, therefore, has even less merit than one in which the prosecutor chose a federal forum simply to obtain a longer sentence under the federal Guidelines. *See Dockery,* 965 F.2d at 1115 (U.S. Attorney "free to choose the federal track precisely be-

BRIGHT, Senior Circuit Judge, dissenting.

The appellant presents us with the interesting question of whether a federal district court possesses the power to adjust an offender's sentence in federal court under the special circumstances of this case.

As the majority observes, Deitz faced charges within the state system. These charges were dismissed with prejudice because Arkansas failed to timely prosecute the charges against him. The state prosecutor, having lost his case, turned the matter over to the federal prosecutor, who proceeded with the present prosecution.

Deitz now asserts, in effect, that he is penalized mightily by the federal prosecution. He contends another drug offender in his circumstances would receive a far shorter sentence in Arkansas state court than the three-year, five-month prison term to which he was sentenced in federal court, which the trial court added to the mandatory five-year term for the weapons offense.[1] He asserts that, under these facts, the sentencing court should have the power to inquire, and then, if necessary, adjust the sentence for the drug conviction.

The majority rejects this assertion because, in its opinion, "the [Sentencing] Commission must have recognized the possibility that a defendant might be subject to prosecution in both a state and a federal forum for the same criminal activity." *Ante,* at 448. The majority cites no authority in support of this assumption, and I have found none.

The majority's actions here give rise to a larger issue: Shall the sentencing judge have some discrete power to ameliorate the federal prosecutor's abuse of power in circumstances such as exist in this case.

Under any sentencing regime, the discretion of law enforcement officers and prosecutors is immense in comparison to the

cause it carries the more severe sentences") (citation omitted).

**1.** Deitz is 49 years old and has no prior convictions. The sentencing judge indicated that he would depart downward from the Guidelines in the sentence were he free to do so.

limited discretion afforded sentencing judges.[2] Law enforcement officials decide whom to arrest and when to do so. They also determine whether a case will be referred to state or federal prosecutors and, in joint task force actions, federal and state law enforcement officials make these decisions together. On occasion, the decision of where to prosecute is made for an improper reason.[3]

The length of time an offender will serve in prison may be the most important decision these officials make. Unfortunately, the decisions vary both from city to city and state to state, particularly with respect to drug cases.

Once a decision is made to prosecute an offender in federal court, the federal prosecutor decides when to charge whom with what. This process frequently results in offenders with like records and similar culpability receiving different sentences. The same phenomenon occurs with respect to plea agreements.[4] The prosecutor decides whether to enter into a plea agreement with an offender and what the terms of the agreement will be.

Although the guidelines have dramatically limited sentencing judges' discretion, there has been little or no restraint on police and prosecutorial discretion. This is indeed unfortunate because a district court's actions are reviewable, while those of the police and prosecutors are not. The dean of administrative law scholars, Kenneth Culp Davis, a supporter of guideline sentencing, agrees that "[i]n the whole legal system, the worst pockets of injustice are clearly not in the federal or state courts, in federal or state legislative bodies, or in federal agencies. The worst pockets of injustice are probably in the activities of police and prosecutors." Kenneth Culp Davis, *Administrative Law of the Eighties*, § 9:1–3, at 280 (1989).

The instant case represents a typical example of how state and federal prosecutors abuse their otherwise unfettered powers. These prosecutors, in effect, thumbed their noses at the state judge who, according to this court's assumption, ordered the matter dismissed with prejudice because the state prosecutor failed to comply with the Arkansas speedy trial rule. The state prosecutor then persuaded the federal prosecutor to bring an indictment and prosecute this case. The two attorneys acted in concert to thwart an individual's rights under state law.

In a practical sense, the defendant who asserts rights granted under state law now faces increased penalties in a federal court.

Federal courts recognize and strongly support principles of federalism in the area of criminal law. For example, federal courts, in the name of comity, require exhaustion of state remedies, reject claims for procedural default, accept facts found by state courts, and, in a myriad of other ways, otherwise respect and abide by states' actions and rulings. Yet, the majority here permits both state and federal prosecutors to flaunt their abuse of Arkansas law and run roughshod over the defen-

**2.** The Commission's guidelines for departure under section 5K1.1, which requires a motion by the government before a downward departure for substantial assistance can occur, only increase the disparity in discretion between prosecutor and judge.

**3.** *See, e.g., United States v. Stanley,* No. 88–CR–499 (S–2) (E.D.N.Y. July 19, 1990) (downward departure due to government's use of threat of mandatory minimums to coerce guilty pleas), *rev'd,* 928 F.2d 575 (2d Cir.), *cert. denied,* — U.S. —, 112 S.Ct. 141, 116 L.Ed.2d 108 (1991); *United States v. Roberts,* 726 F.Supp. 1359 (D.D.C.1989) (narcotics cases moved from D.C. Superior Court to federal court if no guilty plea after one year), *rev'd sub nom., United States v. Mills,* 964 F.2d 1186 (D.C.Cir.) (en banc), *cert.*

*denied,* — U.S. —, 113 S.Ct. 471, 121 L.Ed.2d 378 (1992); *see generally United States v. Brigham,* 977 F.2d 317 (7th Cir.1992) (discussing role of mandatory minimums in plea negotiations); *United States v. Harrington,* 947 F.2d 956, 963–68 (D.C.Cir.1991) (Edwards, J., concurring) (discussing prosecutorial discretion in charging and plea bargaining and discretion given probation officers in recommending sentences under the guidelines).

**4.** The hidden disparity that results from prosecutorial discretion is clearly illustrated in the sentences received by participants of a conspiracy trafficking in narcotics in a series of cases that came before this court, discussed in *United States v. Hammer,* 940 F.2d 1141, 1142–48 (8th Cir.1991) (Heaney, J., concurring).

dant's rights. I say it's time for some braking activity by judicial oversight of federal prosecutors' awesome powers. And a good place to start is here in this case. The federal sentencing judge should have the discretion to correct a prosecutorial wrong by equitably adjusting Deitz's sentence to that which he would have received in the state court had the state prosecutor complied with Arkansas law. Such judicial power must be exercised if we are to preserve some fairness in our federal criminal justice system. Affording sentencing judges this discretion does not violate the Sentencing Guidelines, for the Commission, in a statement of policy, asserts: "[T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could constitute grounds for departure in an unusual case." U.S.S.G. Ch. 1, Pt. A4(b).

This is an unusual case. I would give the able trial judge, the Honorable G. Thomas Eisele, the power to ameliorate the unfair penalty by reducing the drug sentence below the guidelines, should he choose to do so.